2006 ME 109

**STATE of Maine**

v.

**Donald WATTS III.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 27, 2006.

Decided: Aug. 31, 2006.

Geoffrey A. Rushlau, District Attorney, Lisa R. Bogue, Asst. Dist. Atty., Bath, for State.

Benet Pols, Esq., Brown & Pols, P.A., Brunswick, for defendant.

Panel: CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] Following his conviction in the Superior Court (Sagadahoc County, *Jabar, J.*), Donald Watts III, relying on the assertions of a juror dissatisfied with the verdict in which he had participated, moved for a new trial pursuant to M.R.Crim. P. 33, alleging misconduct on the part of another juror. The court granted the motion, entering an order granting Watts a new trial. The State appeals from that order, contending that a new trial was improperly granted, that the trial court should not have inquired into the deliberations of the jury, that the court erred when it found that one of the jurors inaccurately or dishonestly answered voir dire questions, and that the juror was biased. Because we agree with the State that there was an insufficient basis on which to grant a new trial, we vacate the order and remand for a reinstatement of the judgments of conviction.

## I. BACKGROUND

[¶ 2] Watts was indicted and tried for gross sexual assault (Class A), 17–A M.R.S. § 253(1)(A) (2005); unlawful sexual contact (Class D), 17–A M.R.S. § 255–A(1)(A) (2005); and unlawful sexual touching (Class D), 17–A M.R.S. § 260(1)(A) (2005).

[¶ 3] During jury selection, jurors were required to complete a confidential questionnaire pertaining to their ability to remain objective and impartial in a case involving sexual abuse and sexual assault. Each juror had to answer five yes/no questions under oath.[1] Because there was a large jury pool, Watts and the State agreed that any "yes" answer would exclude a juror from the pool. A jury was empanelled, and the trial commenced.

[¶ 4] The evidence presented at trial, viewed in a light most favorable to the State, *see State v. Bouchard,* 2005 ME 106, ¶ 10, 881 A.2d 1130, 1134, revealed the following facts. The victim, then seventeen years old, lived with her sister, brother-in-law, and their three children in Topsham. Watts was a friend of the victim's brother-in-law, and had known the victim for about one year. Watts attended a party one night at their apartment, where approximately a dozen people consumed a significant amount of alcohol and listened to loud music. The victim became intoxicated after consuming at least one coffee cup of straight vodka on an empty stomach.

[¶ 5] While playing cards with other partygoers, the victim became sick. She stopped playing cards and went to the upstairs bathroom, where she vomited and fell asleep on the bathroom floor. Watts later found the victim and helped her to her room. She went to bed, Watts shut

---

1.  These questions were:
    1.  Have you or a close relative or friend ever been a victim of sexual abuse or sexual assault?
    2.  Have you or a close relative or friend ever been subjected to a charge of sexual abuse or sexual assault or been investigated for sexual abuse or sexual assault?
    3.  Have you and other family members ever been separated from one another due in whole or in part to sexual abuse or

sexual assault or claims of sexual abuse or sexual assault?
    4.  Have you had any experiences in life that would make [it] difficult or impossible for you to consider evidence in a case of alleged sexual abuse or sexual assault objectively and impartially?
    5.  Is there any reason why you could not consider evidence in a case of alleged sexual abuse or sexual assault objectively or impartially?

her bedroom door and left, and she fell asleep.

[¶ 6] Later, someone knocked on the victim's bedroom door, came in, sat on her bed, and had a conversation with her. She was unaware at the time that it was Watts with whom she was speaking. Watts asked her if she was ready to come back downstairs to the party. Watts tried to help the victim go downstairs, but she was physically unable to do so. Watts then started kissing her on the neck. She told him "no." He removed her pants, and she told him to stop. He then performed oral sex on her, and she did not tell him to stop. He then got on top of the victim and had vaginal intercourse with her. She again told him to stop, but he did not. She tried to push him off, but was unable to do so. She testified that, at one point, she "blanked out." When Watts finished, he turned on the lights and left the room. At this point, the victim realized that Watts was the perpetrator.

[¶ 7] The victim then dressed herself, and went downstairs where she told her brother-in-law and sister about the incident. The victim's sister confronted Watts, and he left the party. The victim's sister and neighbor accompanied her to the hospital for a sexual assault examination. While at the hospital, the victim reported the incident to the police.

[¶ 8] Watts denied the allegations of the victim, and testified at trial that the sexual activity was consensual.

[¶ 9] On numerous occasions during his closing argument, Watts invited the jurors to assess the facts of the case, and the conflicting versions of the events, from the perspective of their own past sexual experiences. The jury returned a verdict finding Watts guilty on all counts on April 26, 2005.

[¶ 10] On May 3, Watts filed a motion for a new trial under seal, relying on an affidavit from one of the sitting jurors, Juror 19, alleging that one of his fellow jurors, Juror 26, committed misconduct during the voir dire by dishonestly or inaccurately answering the questionnaire.[2] Based on M.R. Evid. 606(b), the State objected to any hearing that would inquire into the deliberations of the jury. Over the State's objection, the court held a post-trial hearing to determine whether Juror 26 had inaccurately or dishonestly answered the questionnaire, and to determine whether Juror 26 should have been excluded from the jury because of bias. Juror 26 had answered "no" to all five questions on the questionnaire.

[¶ 11] At the hearing on the motion for a new trial, the attorney for the State told the court that her office received a message from Juror 26 on April 27. The attorney for the State indicated that when she returned the call, they had a brief conversation. The attorney for the State said that Juror 26:

talked about ... some personal experiences that she had and didn't go into any more detail than that.... [S]he did indicate to me that she had told [her fellow jurors] something about a personal experience and did not reveal whether it was sexual ....

When questioned by the court, the attorney for the State indicated that "[Juror 26]

**2.** Juror 19's affidavit stated that, during the end of deliberations and prior to the jury's final vote to convict Watts, Juror 26 "told the story of her own victimization, or sexual abuse." This incident left Juror 19 "greatly disturbed," and, because his "conscience

[had] been bothering [him]," he met with an attorney to discuss the situation. Juror 19 and his attorney then met with Watts's attorney. Subsequently, Watts filed his motion for a new trial alleging bias on the part of Juror 26.

did not go into any detail about what this experience was."[3]

[¶ 12] After speaking with both attorneys, the court questioned Juror 26. Juror 26 indicated that when she was seventeen years old,[4] she was at a party drinking alcohol, and engaged in a consensual sexual experience with a teenage boy, who she thought was approximately eighteen years old. She accompanied the boy to a parked car, and they started kissing and touching each other. He eventually placed his hand down her pants, and this physical contact hurt her. This contact included digital vaginal penetration, which caused bleeding and required medical treatment afterward. When the touching hurt her, however, she told him to stop, and he did stop. She did not consider herself to be a victim of sexual abuse or sexual assault. She also testified that she did not consider her experience as a teenager to have affected her objectivity or impartiality in reaching a verdict in Watts's case. She told the court that she never even thought about this sexual experience until she was in the jury room. It was when the other jurors discussed similar life experiences involving drinking alcohol at parties when they were young that Juror 26 remembered this event, and then told the deliberating jurors about her experience.

[¶ 13] When the court questioned Juror 19, he testified that the outcome of the 2004 Presidential Election had caused him to suffer from anxiety, insomnia, and depression, and he did not feel like his "normal, feisty self" during the deliberations. If he had not been suffering from these conditions during the deliberations, he stated that he "probably would have said no and attempted to hang the jury." He also testified that Juror 26 revealed that what had happened to her as a teenager went further than she wanted it to, and that she had to stop it somehow. Although Juror 19's affidavit stated that Juror 26 "told the story about her own victimization, or sexual abuse," Juror 19 admitted that Juror 26 never stated that she had been a victim, or that she had been sexually abused. Rather, that was Juror 19's own characterization of Juror 26's sexual experience.

[¶ 14] Following the hearing, the court found that Juror 26 incorrectly and dishonestly answered questions 4 and 5, that Juror 26 was biased, and that she could not have forgotten her past sexual experience during voir dire because she "felt strongly enough about the incident to bring it up during jury deliberations." The court found that Juror 26 should have revealed her prior sexual experience by answering "yes," and that she had "more than a passing interest in the outcome of this case," as evidenced by her telephone call to the attorney for the State to congratulate her on Watts's conviction. Based on these findings, the court granted Watts's motion for a new trial. The State sought and received approval from the Attorney General pursuant to 15 M.R.S. § 2115–A(2), (5) and M.R.App. P. 21(b) to file this appeal.

## II. DISCUSSION

[¶ 15] The law strongly disfavors inquiry into the deliberations of juries. *State v. Fuller*, 660 A.2d 915, 917 (Me. 1994). That policy is expressed in M.R. Evid. 606(b), which provides:

---

**3.** During the hearing, Watts questioned Juror 26 about why she contacted the attorney for the State after the verdict. Juror 26 stated, "I called to congratulate her."

**4.** Juror 26 was forty-three years old at the time of the trial.

**(b) Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning any juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received.

[¶ 16] To protect the privacy of the jury room, we long ago articulated several important public policy considerations that militate against permitting jurors to impeach their verdicts, including:

(1) the need for stability of verdicts; (2) the need to conclude litigation and desire to prevent any prolongation thereof; (3) *the need to protect jurors in their communications to fellow jurors made in the confidence of secrecy of the jury room;* (4) the need to save jurors harmless from tampering and harassment by disappointed litigants; (5) *the need to foreclose jurors from abetting the setting aside of verdicts to which they may have agreed reluctantly in the first place or about which they may in the light of subsequent developments have doubts or a change of attitude.*

*Patterson v. Rossignol,* 245 A.2d 852, 857 (Me.1968) (emphasis added); *see also Cyr v. Michaud,* 454 A.2d 1376, 1383 n. 3 (Me. 1983) (noting that the policy considerations set out in *Patterson* are now codified in Rule 606(b)).

[¶ 17] Courts should inquire into the validity of a jury verdict only in "very limited circumstances," *Fuller,* 660 A.2d at 917, and should be very cautious in overturning jury verdicts. Although serious allegations of juror bias in the context of juror dishonesty or inaccuracy in answering a voir dire questionnaire is one such limited circumstance when the court, within its discretion, may proceed with a posttrial hearing to inquire into potential juror bias, a court must make such an inquiry with great caution. *See State v. Chesnel,* 1999 ME 120, ¶¶ 29, 31, 734 A.2d 1131, 1141; M.R. Evid. 606(b). Unless "[i]t is ... *sufficiently clear* that [a juror's] nonanswer [to a voir dire question] is apparently a dishonest or incorrect answer to the question *in the context in which it was asked,*" there is an "insufficient basis" to impeach a jury verdict. *Chesnel,* 1999 ME 120, ¶ 31, 734 A.2d at 1141 (emphasis added) (noting the specificity requirement of voir dire questions). In this case, when viewed in the proper context, the affidavit and testimony of Juror 19, and the testimony and voir dire answers of Juror 26, provide an insufficient basis on which to set aside the jury verdict.

[¶ 18] The questions asked of the jurors in the questionnaire were in the context of identifying those jurors who could not sit on the case with fairness and impartiality. Those jurors who would most likely have been unable to sit fairly and objectively in this case were jurors who had been the victims of sexual abuse or sexual assault. Juror 26 did not consider herself to have been the victim of sexual abuse or a sexual assault, and never characterized the limited sexual experience she related to her fellow jurors as sexual abuse or as a sexual assault, which was what the questionnaire was directed toward. Rather, the experi-

ence that Juror 26 related to her fellow jurors was consensual, albeit uncomfortable, and an experience that would not be uncommon among teenagers and young adults. Moreover, during his closing argument, Watts's attorney repeatedly implored the members of the jury to call on their own sexual experiences in assessing the credibility of the witnesses. That is exactly what Juror 26 did.

[¶ 19] Juror 19 "agreed reluctantly in the first place" to vote to convict Watts and later had "doubts or a change of attitude." *Patterson*, 245 A.2d at 857. It was this same Juror 19, and not Juror 26, who characterized Juror 26's experience as being sexual abuse or sexual assault. Juror 19 testified as to his concern with his own failure to vote to acquit Watts and create a hung jury. He also testified about his depression, insomnia, and the anxiety he felt following the outcome of the Presidential election—an election that occurred more than five months prior to the trial. This is the very kind of attempt by a disgruntled juror to set aside a verdict that Rule 606(b) is designed to prevent. *See Id.*.

[¶ 20] The evidence on which the trial court relied to make its finding of bias is simply insufficient, and the court misapprehended the meaning of the evidence. That a juror agrees with a verdict of guilty for which that juror voted, or compliments the prosecuting attorney, as expressed in Juror 26's phone call, *after* a verdict is rendered, does not mean that the juror did not objectively come to the conclusion of guilt after hearing the evidence and participating in the jury deliberations. *Cf. State v. Boyce*, 1998 ME 219, ¶ 8, 718 A.2d 1097, 1100 (information gained or opinions formed by judge based on facts presented in same proceeding do not constitute a basis for recusal on the grounds of bias except in extraordinary circumstances).

Similarly, the answers of Juror 26 to the questionnaire have to be viewed from the perspective of *when* they were given— before Juror 26 knew about the facts of the case revealed through the testimony, and before she and her fellow jurors were strongly urged by defense counsel to view the evidence from the perspective of their own sexual experiences. There is an insufficient basis to support a finding of the kind of bias to justify the overturning of the jury's verdict in this case. *See Chesnel*, 1999 ME 120, ¶ 29, 734 A.2d at 1140 (a finding of bias must be grounded in more than speculation).

[¶ 21] Rule 606(b) protects jurors in their communication to fellow jurors made in the confidence of the jury room, and prevents the impeachment of jury verdicts by jurors who later have a change of heart. *Patterson*, 245 A.2d at 857. Both of those factors are present in this case. If Juror 19 felt strongly that Watts was not guilty, he should not have voted to convict Watts. Juror 19's remorse, and Juror 26's discussion of her prior consensual sexual experience during the jury's deliberations, coupled with her congratulatory phone call to the attorney for the State *after* the case was completed, provide an insufficient basis to overturn the verdict in this case. *See Chesnel*, 1999 ME 120, ¶¶ 29, 31, 734 A.2d at 1140–41. Consequently, the court erred in granting Watts's motion for a new trial.

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of an order denying the motion for a new trial, and reinstatement of the judgments of conviction.