2007 ME 153

**STATE of Maine**

v.

**Donald WATTS III.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 1, 2007.
Decided: Dec. 27, 2007.

---

**3.** Absent a conspiracy theory not at issue here. *See* 17–A M.R.S. § 151 (2006).

Geoffrey A. Rushlau, Dist. Atty., Lisa R. Bogue, Asst. Dist. Atty., Bath, for the State.

Benet Pols, Brunswick, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

MEAD, J.

[¶ 1] Donald Watts appeals from a judgment of conviction of gross sexual assault (Class A), 17–A M.R.S. § 253(1)(A) (2006); unlawful sexual contact (Class D), 17–A M.R.S. § 255–A(*l*)(A) (2006);[1] and unlawful sexual touching (Class D), 17–A M.R.S. § 260(1)(A) (2006), entered in the Superior Court (Sagadahoc County, *Jabar, J.*) upon a jury verdict finding him guilty. The judgment followed our decision in *State v. Watts*, 2006 ME 109, 907 A.2d 147, in which we vacated the Superior Court's order granting Watts's motion for a new trial. On this appeal, Watts argues that

the trial court erred in admitting a hearsay statement as an excited utterance over his objection. We affirm the judgment.

## I. BACKGROUND

[¶ 2] The underlying facts are set forth in our prior opinion. *Watts*, 2006 ME 109, ¶¶ 4–8, 907 A.2d at 148–49. In sum, the seventeen-year-old victim was living with her sister in Topsham when Watts sexually assaulted her in an upstairs bedroom during a party. Following the assault, the victim dressed and met her sister on the stairs. In the exchange that is central to this appeal, the sister testified that:

> [S]he just looked at me. She stopped and she looked at me and I looked at her and I said are you okay? She said—

DEFENSE COUNSEL: Objection.

PROSECUTOR: Before you say what she said, how did she look to you?

A: She just looked really weird and like she was about to cry.

COURT: I'll overrule the objection. You may ask.

PROSECUTOR: What did she say to you when you saw her looking upset?

DEFENSE COUNSEL: Objection.

COURT: Overruled.

[At sidebar] DEFENSE COUNSEL: I'm not sure what the basis for this is. Is it an exception to the hearsay rule? She said she looked weird.

COURT: She started crying. I'll allow it.

[After sidebar] PROSECUTOR: What did she say to you?

A: She said something ain't right. I said what is wrong with you? She said

1. The indictment and the judgment and commitment both cite 17–A M.R.S.A. § 255, which was repealed and replaced by 17–A M.R.S. § 255–A. P.L. 2001, ch. 383, §§ 22, 23 (effective Jan. 31, 2003).

Watts just raped me; that's what she said.

Q: Did she use that word?

A: Yes.

[¶ 3] Watts was found guilty on all counts. Following our remand, the Superior Court entered judgment and sentenced Watts on the gross sexual assault to six years imprisonment, with all but two years suspended, and four years of probation; on the counts of unlawful sexual contact and unlawful sexual touching the court imposed six months concurrent. Watts was also ordered to pay restitution. This appeal followed.

## II. DISCUSSION

 [¶ 4] The State acknowledges that the victim's statement, "Watts just raped me," repeated by her sister on the witness stand, was hearsay. It argues that the statement was nonetheless admissible as substantive evidence against Watts because it qualified as an excited utterance, which is an exception to the hearsay rule.[2] *See State v. Ahmed,* 2006 ME 133, ¶ 12, 909 A.2d 1011, 1016 (statement admitted as excited utterance may be used as substantive evidence).

 ¶ [5] A court may admit a hearsay statement as an excited utterance if it finds that: (1) a startling event occurred; (2) the hearsay statement related to the startling event; and (3) the hearsay statement was made while the declarant was under the stress of excitement caused by that event. *State v. Robinson,* 2001 ME 83, ¶ 10, 773 A.2d 445, 448. These findings are preliminary questions for the trial court pursuant to M.R. Evid. 104. It is within the discretion of the court to admit such statements in evidence and the court's decision will be upheld unless clearly erroneous. *Id.*

 [¶ 6] Watts argues that the Superior Court clearly erred in its implicit finding on the third factor, asserting that there was no competent evidence to support a conclusion that the victim was still under the stress of the sexual assault when she told her sister, "Watts just raped me." There is no "bright line" time limit to use in deciding when the stress of excitement caused by a startling event has dissipated. *Robinson,* 2001 ME 83, ¶ 12, 773 A.2d at 449. A court must consider a variety of factors, including:

> the nature of the startling or stressful event, the amount of time that passed between the startling event and the statement, the declarant's opportunity or capacity for reflection or fabrication during that time, the nature of the statement itself, and the declarant's physical and emotional condition at the time of the statement.

*Id.* (footnotes collecting cases omitted).

[¶ 7] Assessing those factors here, the nature of the event was extraordinarily stressful—a sexual assault on a seventeen-year-old girl by a grown man. Prompted only by her sister's general questions, "Are you okay?" and "What is wrong with you?" the nature of the victim's statement was a straightforward declaration: "[S]omething ain't right. . . . Watts just

**2.** M.R. Evid. 802 provides that: "Hearsay is not admissible except as provided by law or by these rules."

M.R. Evid. 803(2) sets out one of the exceptions to the hearsay rule:

> The following [is] not excluded by the hearsay rule, even though the declarant is available as a witness:
> (2) *Excited utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

raped me." [3] The sister described the victim's emotional condition in testifying that "She just looked really weird and like she was about to cry," and that "The way she looked at me—it scared me." The victim said that she was visibly upset or crying when she talked to her sister.

[¶ 8] Although the record does not reveal the precise amount of time between the assault and the statement, the victim testified that the first thing she did after Watts left her room was get dressed and go downstairs. Her sister testified that the statement was made when she met the victim coming down the stairs. The evidence therefore supports a conclusion that the victim had little opportunity to reflect or fabricate. *See Robinson,* 2001 ME 83, ¶ 14, 773 A.2d at 450 (victim of a domestic assault could have remained under the stress of attack for three to twelve minutes); *Ahmed,* 2006 ME 133, ¶ 15, 909 A.2d at 1017 (admission of a still-crying victim's statement as an excited utterance after a seven minute interval was not error). Furthermore, given her intoxication and emotional state it is not clear that she had the capacity to do so. *See Watts,* 2006 ME 109, ¶¶ 4–6, 907 A.2d at 148–49.

[¶ 9] Considering all of the applicable factors, the Superior Court did not clearly err in finding that the victim remained under the stress of excitement caused by Watts's assault when she made the statement to her sister. Accordingly, it was within the court's discretion to admit the statement in evidence as an excited utterance. *Robinson,* 2001 ME 83, ¶ 10, 773 A.2d at 448.

The entry is:

Judgment affirmed.

---

3. Contrary to Watts's argument, our decision in *State v. Barnies,* 680 A.2d 449 (Me.1996), does not control the result here. In *Barnies,* the alleged victim was initially silent when a police officer specifically asked her if she had been assaulted. In response to the officer's follow-up questions, she told him that Barnies had put a lit cigarette to her eye and kicked her. After the officer testified to the statement at trial, we vacated Barnies's conviction, finding that there were "too many indicia of conscious reflection on the part of the declarant" for the statement to qualify as an excited utterance. *Barnies,* 680 A.2d at 453. Here, the victim answered her sister's generic questions without any evident hesitation. As was the case in *State v. Robinson,* the *Barnies* holding is inapplicable to these facts. *See State v. Robinson,* 2001 ME 83, ¶ 14 n. 11, 773 A.2d 445, 450.