2010 ME 55

**Shelly MA et al.**

v.

**Patrick J. BRYAN.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 29, 2010.
Decided: June 24, 2010.

Douglas J. Alofs, Esq., Robinson, Kriger & McCallum, Portland, ME, for Shelly Ma.

Deborah A. Buccina, Esq., Douglas, Denham, Buccina & Ernst, Portland, ME, for Patrick Bryan.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1] Shelly Ma and Nghia Lam, individually and on behalf of their two children (Ma), appeal from a judgment entered in the Superior Court (Cumberland County, *Warren, J.*) on a jury verdict in favor of Patrick J. Bryan on Ma's complaint for negligence and loss of consortium in connection with a motor vehicle accident. Ma contends that insufficient evidence exists in the record to support the jury's verdict, and that the court erred in denying Ma's motion for a new trial on this basis. We affirm the judgment.

## I. FACTS AND PROCEDURE

[¶ 2] Because the jury found in favor of Bryan, we are required to view the evidence presented at trial in the light most favorable to him. *See Cates v. Donahue,* 2007 ME 38, ¶ 9, 916 A.2d 941, 943. On the morning of March 9, 2002, Shelly Ma was driving southwest on Warren Avenue in Portland. Ahead of Ma on the right, Bryan was exiting a parking lot and attempting to make a left turn onto Warren Avenue in order to head northeast. Bryan came to a full stop at the edge of the parking lot and first looked left because the closest traffic was coming from that direction and because he planned to turn in that direction. He saw a pickup truck approaching him on Warren Avenue, but noted that it had its right blinker on and was moving into the right-hand turn lane about two hundred feet from him, indicat-

ing that the truck was turning right into the parking lot from which Bryan was exiting.[1] Bryan saw no other vehicles approaching him from the left. He then looked right and saw no traffic coming from that direction that would interfere with his intended left turn. He pulled forward and, as he pulled forward, he looked to his left again. Bryan then immediately saw and collided with Ma.

[¶ 3] In 2007, Ma filed a complaint against Bryan in the Superior Court asserting claims for negligence and loss of consortium. The court conducted a jury trial in June of 2009. The verdict form required the jury to first determine the compound question, "Was Patrick Bryan negligent and was his negligence a cause of the March 9, 2002[,] accident?" The jury responded in the negative, and thus returned a verdict in favor of Bryan. The court denied Ma's subsequent motion for a new trial in which she argued that the verdict was manifestly wrong. *See* M.R. Civ. P. 59(a). Ma timely appeals.

## II. DISCUSSION

[¶ 4] Ma contends that the court erred in denying her motion for a new trial. She argues, as she did before the trial court, that the jury's verdict was not supported by the evidence, and that Bryan was negligent as a matter of law pursuant to 29–A M.R.S. § 2053(4) (2009).[2] We review the factual findings underlying a motion for new trial for clear error, and the court's ultimate disposition on the motion for an abuse of discretion. *Estate of Fournier,* 2009 ME 17, ¶ 11, 966 A.2d 885, 888–89.

---

1. The truck did turn right as Bryan expected.

2. "An operator of a vehicle entering a public way from a private way must yield the right-of-way to a vehicle on the public way or to a pedestrian. After yielding, the operator of the vehicle must proceed cautiously." 29–A M.R.S. § 2053(4) (2009).

[¶ 5]  In considering Ma's motion, the trial court aptly wrote:

In this case, while the jury could certainly have reached a different result, the court cannot conclude that there was no credible evidence to support the jury's verdict.  From Mr. Bryan's testimony, the jury could have concluded that Mr. Bryan looked to his left, saw only a truck that was positioned to take a right turn into the parking lot, estimated that he had enough time to pull out, then looked to his right and proceeded to cross the roadway.  From the testimony and from photographic evidence, the jury could have concluded that it was not negligent for Mr. Bryan to have proceeded to pull out and cross Warren Avenue given the facts adduced at trial. Specifically, the jury could have concluded that, under the particular circumstances of this case, Mr. Bryan was not negligent just because he did not glance to his left a second time.

In order to reach its verdict, moreover, the jury did not actually have to conclude that Mr. Bryan was *not* negligent.  It only had to conclude that plaintiffs had not proven by a preponderance of the evidence that Mr. Bryan *was* negligent.  The jury could have concluded that there was an equal possibility either (1) that, with no negligence on Mr. Bryan's part, his view of Ms. Ma's vehicle was obscured by the truck or (2) that, because Ms. Ma was exceeding the speed limit, Mr. Bryan's estimate that he had enough time to cross the avenue (when he looked to his left and saw only the truck) was reasonable but proved to be incorrect.

We decline to disturb this carefully considered and well-reasoned decision.

[¶ 6]  As the plaintiff and the party with the burden of proof at trial, Ma can succeed in challenging the verdict on appeal only if she can establish that the jury was *compelled to find* in her favor on each element of her claims.  *See Irish v. Gimbel,* 2000 ME 2, ¶ 8, 743 A.2d 736, 738. This is no easy task, given that the jury was not required to believe *any* of Ma's testimony, even if that testimony was not disputed by Bryan.  *See Dionne v. LeClerc,* 2006 ME 34, ¶ 15, 896 A.2d 923, 929.

[¶ 7]  Furthermore, the jury is permitted to draw all reasonable inferences from the evidence.  *Garland v. Roy,* 2009 ME 86, ¶ 17, 976 A.2d 940, 945.  We have previously defined an inference as "a deduction as to existence of a fact which human experience teaches us can reasonably and logically be drawn from proof of other facts."  *Ginn v. Penobscot Co.,* 334 A.2d 874, 880 (Me.1975) (quotation marks omitted).  Here, the jury reasonably could have inferred that Ma was speeding, or following the truck too closely, for example.  As the court pointed out, the jury may have concluded that the reason Bryan did not see Ma at the time was because she was not there to be seen.  Indeed, Bryan testified that he returned to the accident scene the next day to figure out "how ... [Ma's] car [got] there that fast."  Even if Ma's testimony that she was not speeding was not controverted, the jury is not required to find that she was not speeding, and is not required to accept her version of the accident.

[¶ 8]  Significantly, we have never vacated a jury verdict in favor of the defendant on the ground that the jury was compelled to find in favor of the plaintiff in a motor vehicle negligence case.  We accord significant deference to jury verdicts because the jury is best situated to evaluate the credibility and demeanor of witnesses.  The trial court, acting on a motion for a new trial is also due some level of deference because it, too, saw and heard the witnesses; our review of a transcript is a distant third.  *See Markley v. Semle,*

1998 ME 145, ¶ 19, 713 A.2d 945, 950 ("The sifting and weighing of evidence is peculiarly the function of the trier." (quotation marks omitted)); *Marr v. Shores*, 495 A.2d 1202, 1206 (Me.1985) ("The justice before whom an action has been tried is in a far better position than an appellate court to know whether in light of his observations at trial the [jury's verdict is] wholly inconsistent with the proof [at trial]." (quotation marks omitted)). Nearly sixty years ago, our predecessors discussed trial testimony from the viewpoint of an appellate court when considering a motion for a new trial. They wrote:

Human nature is such, that when the driver of one automobile is in collision with another, or he has had any form of accident, the driver is often inclined to remember what he desires to remember. Accidents happen so quickly that there is neither time nor opportunity for the driver to observe all locations, incidents and circumstances. It is only after the accident has happened, and while the driver reviews the facts with a disturbed or uncertain mind, that he endeavors to recall the facts, and to convince himself perhaps, that he acted at the time in the manner that he knows he should have acted. As time goes on, he has so satisfied his own mind as to what happened, that he honestly believes that he actually remembers facts that show he was not at fault. Individuals differ so much in powers of observation, discrimination, and memory, that the members of a jury who hear testimony relating to an accident, have the opportunity to watch carefully the appearance, hesitancies, inconsistencies, and other "court room incidents" that may indicate false or erroneous testimony. A printed record of the testimony gives the reader nothing through ear and eye of some vital things that often lead to truth.

Memory and imagination are in close intellectual brotherhood, and it is diffi-cult to tell what are real memory images and what are details filled in by imagination. The unconscious impressions so blend themselves with conscious realities that they often appear to make a harmonious whole. *The only check on such mistaken, or fabricated, testimony is the appearance of the witness himself, the credible testimony of other witnesses, and the circumstances surrounding the transaction. The jury which has heard the testimony and seen the witnesses is, therefore, in a better position to decide disputed questions of fact, than is one who only reads a record.*

*Burtchell v. Willey*, 147 Me. 339, 344–345, 87 A.2d 658, 662 (1952) (emphasis added). In 2010, it is still up to the jury, not us, to determine how credible the witnesses are. *Anderson v. O'Rourke*, 2008 ME 42, ¶ 17, 942 A.2d 680, 685.

[¶ 9] We are also generally barred from inquiring into the jury's deliberations. *State v. Watts*, 2006 ME 109, ¶ 15, 907 A.2d 147, 150. The reasons for this rule are compelling:

(1) the need for stability of verdicts; (2) the need to conclude litigation and desire to prevent any prolongation thereof; (3) the need to protect jurors in their communications to fellow jurors made in the confidence of secrecy of the jury room; (4) the need to save jurors harmless from tampering and harassment by disappointed litigants; (5) the need to foreclose jurors from abetting the setting aside of verdicts to which they may have agreed reluctantly in the first place or about which they may in the light of subsequent developments have doubts or a change of attitude.

*Id.* ¶ 16, 907 A.2d at 151 (quotation marks and emphasis omitted). Hence our adoption of M.R. Evid. 606(b), which prohibits a juror from testifying as to any statements made during deliberations or "to the effect

of anything upon that juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning any juror's mental processes in connection therewith." With these considerations in mind, we are permitted to inquire into the validity of a verdict only in very limited circumstances, for "serious allegations of juror bias in the context of juror dishonesty or inaccuracy in answering a voir dire questionnaire," for example. *Watts*, 2006 ME 109, ¶ 17, 907 A.2d at 151.

[¶ 10] In the instant matter, although Ma's motion for a new trial asserted that the jury's verdict was due to prejudice, bias, passion, or mistake of fact, Ma pointed to nothing that might demonstrate prejudice other than the fact that the verdict was not in her favor. The record is entirely devoid of any indication that the jury reached its verdict on any improper basis, and in the absence of any "verifiable external manifestations" of such impropriety, we must accept the verdict as is. *Taylor v. Lapomarda*, 1997 ME 216, ¶ 6, 702 A.2d 685, 687 (quotation marks omitted).

[¶ 11] We do not know, and we will never know, why the jurors did not believe that Ma had proved that Bryan was negligent. What we do know is that: (1) there is no evidence in the record of any juror bias, prejudice, or misconduct; (2) there is no evidence to support a suggestion that the jurors failed to follow the law; and (3) the trial court, which saw the witnesses at the same time and place as the jurors, concluded that the verdict was supportable. The jury's verdict is rational and not so "manifestly or clearly wrong that it is apparent that the conclusion ... was the result of prejudice, bias, passion, or a mistake of fact." *Chiapetta v. Lumbermens Mut. Ins. Co.*, 583 A.2d 198, 201 (Me.1990) (quotation marks omitted).

The entry is:

Judgment affirmed.