MAINE SUPREME JUDICIAL COURT          Reporter of Decisions
Decision:    2018 ME 70
Docket:      Yor-17-401
Submitted
  On Briefs:  April 25, 2018
Decided:     May 22, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## STATE OF MAINE

v.

## PETER W. LEON

HJELM, J.

[¶1] Peter W. Leon appeals from a judgment of conviction of assault (Class D), 17-A M.R.S. § 207(1)(A) (2017), entered by the trial court (York County, *Cashman, J.*) after a jury trial. Leon contends that he was denied a fair trial because one of the jurors reported that she had felt pressured to return a guilty verdict.[1] Because the juror's report did not fall outside of the general

---

[1] For the first time in this action, Leon also argues that the court's jury instruction on "offensive physical contact" was incorrect, and that the court erred by failing to instruct the jury on the definition of assault that involves "bodily injury." See 17-A M.R.S. § 207(1)(A) (2017). There was no error—much less obvious error—in the court's instructions. See M.R.U. Crim. P. 52(b); State v. Lovejoy, 2014 ME 48, ¶ 19, 89 A.3d 1066 (obvious error standard of review).

First, the court correctly defined "offensive physical contact" for the jury. *See, e.g., State v. Pozzuoli*, 1997 ME 91, ¶ 7, 693 A.2d 745 (defining "offensive physical contact" as "what a reasonable person might perceive to be offensive as well as the victim's subjective interpretation of the contact"); Alexander, *Maine Jury Instruction Manual* § 6-59 at 6-113 (2017 ed.). Second, there was no evidence that Leon caused bodily injury to the victim. *See* 17-A M.R.S. § 207(1)(A); *State v. Griffin*, 459 A.2d 1086, 1091 (Me. 1983) (recognizing that the assault statute, section 207, "bifurcates the crime into

2

prohibition against consideration of a juror's statement regarding the dynamics of the jury's deliberations, there was no error, and we affirm the judgment.

## I. BACKGROUND

[¶2] When the evidence is viewed in the light most favorable to the State, "the jury could rationally have found the following facts beyond a reasonable doubt." *State v. Hall*, 2017 ME 210, ¶ 2, 172 A.3d 467.

[¶3] On October 24, 2016, a mother drove her fifteen-year-old daughter—the victim—to a fast-food establishment in Sanford. While the mother waited in the car, the victim entered the establishment and placed her order. The victim stepped away from the counter and used her cell phone as she waited. Moments later, sixty-five-year-old Leon entered the store to fill his water bottle and make a purchase while his wife waited in the car. After Leon filled his water bottle, he walked over to the victim, placed his hand on the victim's back, and told the victim that her "jeans looked nice . . . nice and tight in all the right places." The victim testified that Leon's conduct "really grossed

two separate varieties of unlawful conduct, (1) conduct causing only an offensive physical contact to another . . . and (2) . . . bodily injury as statutorily defined"); *State v. Carmichael*, 405 A.2d 732, 735 (Me. 1979) (explaining that "section 207 . . . specif[ies] *two independent* types of simple assault, one where bodily injury results and another where there is merely an offensive physical contact without resulting bodily injury" (emphasis added)). The court therefore correctly did not instruct the jury on that alternative definition of assault. *See State v. O'Brien*, 434 A.2d 9, 13 (Me. 1981) (stating that jury instructions are to address only those issues generated by the evidence).

[her] out and made [her] very uncomfortable." As a result, she immediately sent a text message to her mother, who proceeded to enter the store as her daughter was leaving. The mother encountered Leon and called 9-1-1. The incident was recorded on the store's surveillance equipment.

[¶4] In January of 2017, Leon was charged by complaint with one count of assault (Class D), 17-A M.R.S. § 207(1)(A), and entered a plea of not guilty. At a one-day jury trial held in August of 2017, the surveillance video was admitted in evidence and played for the jury. After also hearing from several witnesses including the victim, her mother, and Leon,[2] the jury returned a guilty verdict. Upon inquiry by the court, all of the jurors affirmed collectively that this was their verdict. Because of the late hour, the court continued the matter to the next day for sentencing.

[¶5] As the jury was leaving the courtroom after it was discharged, Leon spoke briefly to one of the jurors. After that interaction, the juror told a judicial marshal that she had "gone against all of her morals in convicting this man" and that "the State had not proven the case but she could not make her fellow jurors continue with their deliberations and come back [the following day]." Although

---

[2] During his testimony, Leon stated that he "noticed . . . [the victim's] ankles, [the jeans] were so fitted at the ankles." He admitted that he touched the victim on her back and that he made an "off comment" but did not think "it was derogatory . . . [or] wrong."

4

the marshal told the juror that she could contact the court the following morning to express any concerns, the juror did not so do.

[¶6] That next morning, when the parties were back in court for the sentencing hearing, the court informed the parties of the juror's statement to the marshal and appropriately provided them with the marshal's report about the matter. When the court invited the parties to be heard, the State expressed its view that the report could not affect the verdict. Leon's attorney then stated that she wanted to hear from the court first but "then might be heard if it seems appropriate." The court announced its conclusion that there was no evidence of juror misconduct and that the guilty verdict would stand. Leon then requested a continuance of the sentencing hearing in order to research the jury issue. The court denied that request, proceeded to hold the sentencing hearing, and imposed the minimum mandatory $300 fine, *see* 17-A M.R.S. § 207(3) (2017), and a fully suspended sixty-day jail term, subject to one year of administrative release with conditions that include no contact with the victim or her family, and psychological and sexual harassment counseling. Leon filed a timely notice of appeal. *See* 15 M.R.S. § 2115 (2017); M.R. App. P. 2B(b)(1).

## II. DISCUSSION

[¶7]  Leon contends that the conviction should be set aside because, during deliberations, a juror reportedly felt some pressure to find him guilty. In support of this contention, Leon relies on the juror's statements to the marshal.[3]  Leon failed to preserve this argument because he chose to defer making any argument to the court until after the court would consider the issue, thereby effectively waiving his right to be heard.  Consequently, we review for obvious error, which Leon has the burden to establish.  *See* M.R.U. Crim. P. 52(b); *State v. Haji-Hassan*, 2018 ME 42, ¶ 18, --- A.3d ---.  Here, no matter what standard of review is imposed, the court committed no error.

[¶8]  "It is the general rule since Lord Mansfield's time that the testimony of a juror is not available to impeach a verdict in which [that juror] participated." *Patterson v. Rossignol*, 245 A.2d 852, 856 (Me. 1968).  The effect of this rule is that a court is "generally barred from inquiring into the jury's deliberations." *Ma v. Bryan*, 2010 ME 55, ¶ 9, 997 A.2d 755.  This principle is predicated on the salutary policy considerations we have repeatedly

---

[3]  Leon also alleges that, during the trial, the marshal "intimidated" the jurors by the way she looked at them.  There is nothing whatever in the record to support this assertion, which Leon raises here for the first time. *See Ma v. Bryan*, 2010 ME 55, ¶ 11, 997 A.2d 755 (rejecting a claim of jury prejudice, in relevant part, when "there is no evidence in the record of any juror bias, prejudice, or misconduct"); *see also Lovejoy*, 2014 ME 48, ¶ 19, 89 A.3d 1066 (obvious error standard of review).

6

articulated in our case law, *see, e.g.*, *Patterson*, 245 A.2d at 857, and subsequently codified in Maine Rule of Evidence 606(b),[4] *see Cyr v. Michaud*, 454 A.2d 1376, 1383 n.3 (Me. 1983). These policy considerations include

> (1) the need for stability of verdicts; (2) the need to conclude litigation and desire to prevent any prolongation thereof; (3) the need to protect jurors in their communications to fellow jurors made in the confidence of secrecy of the jury room; (4) the need to save jurors harmless from tampering and harassment by disappointed litigants; [and] (5) the need to foreclose jurors from abetting the setting aside of verdicts to which they may have

---

[4] Maine Rule of Evidence 606 reads in full:

**Rule 606. Juror's Competency as a Witness**

(a)   **At the trial.** A juror may not testify as a witness before any jury drawn from the panel of which the juror was a member. If a juror is called to testify, the court must give any party an opportunity to object outside the jury's presence.

(b)   **During an inquiry into the validity of a verdict or indictment.**

    (1)   *Prohibited testimony or other evidence.* During an inquiry into the validity of a verdict or indictment, a juror may not testify about:

        (A)   Any statement made or incident that occurred during the jury's deliberations;

        (B)   The effect of anything on that juror's or another juror's vote; or

        (C)   Any juror's mental processes concerning the verdict or indictment.

    The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

    (2)   *Exceptions.* A juror may testify about whether:

        (A)   Extraneous prejudicial information was improperly brought to the jury's attention; or

        (B)   An outside influence was improperly brought to bear on any juror.

agreed reluctantly in the first place or about which they may in the light of subsequent developments have doubts or a change of attitude.

*Patterson*, 245 A.2d at 857.

[¶9]  Pursuant to our case law and Rule 606(b), a court may not consider juror "testimony or other evidence" about "[a]ny statement made or incident that occurred during the jury's deliberations; [t]he effect of anything on that juror's . . . vote; or [a]ny juror's mental processes concerning the verdict," M.R. Evid. 606(b)(1), because such evidence—including statements made by a juror—cannot be used to impeach a verdict, *see State v. Watts*, 2006 ME 109, ¶ 17, 907 A.2d 147; *Patterson*, 245 A.2d at 856.

[¶10]  There are narrowly drawn exceptions to this prohibition, including, for example, a report that a juror has been improperly exposed to "extraneous prejudicial information" or an "outside influence," or that a juror has engaged in external misconduct affecting the verdict.  M.R. Evid. 606(b)(2); *see also, e.g.*, *Ma*, 2010 ME 55, ¶ 9, 997 A.2d 755 (a court will, in limited circumstances, "inquire into the validity of a verdict . . . [namely,] for serious allegations of juror bias in the context of juror dishonesty or inaccuracy in answering a voir dire questionnaire, for example" (quotation marks omitted)); *Patterson*, 245 A.2d at 856 (stating that a juror "may testify to any facts bearing

upon the question of the existence of an outside influence"). Absent such an exception, however, a court may not inquire into the jury deliberation process. *See* M.R. Evid. 606(b); *State v. Hurd*, 2010 ME 118, ¶ 42, 8 A.3d 651 (stating that a court cannot "inquire[] into the jury's deliberative process beyond establishing, to the extent permitted by M.R. Evid. 606(b), that the jury's original verdict . . . was not the product of outside influence or external juror misconduct"); *see also Watts*, 2006 ME 109, ¶ 15, 907 A.2d 147 ("The law strongly disfavors inquiry into the deliberations of juries.").

[¶11]  This principle applies when a juror is haled into a courtroom in connection with a challenge to a jury verdict.  In addition, "the ban on juror testimony regarding the internal deliberation process of the jury . . . is a ban on court consideration of *any* post-discharge juror communications about such subjects."  *Hurd*, 2010 ME 118, ¶ 33, 8 A.3d 651 (emphasis added).  Therefore, the prohibition contained in Rule 606(b)(1) is fully applicable in the situation presented in this case.

[¶12]  Here, the juror's statement is a classic instance of a matter into which the parties and the court may not inquire, and which may not be used for the purpose of impeaching a verdict.  *See Hurd*, 2010 ME 118, ¶¶ 42, 44-45, 8 A.3d 651; *Ma*, 2010 ME 55, ¶¶ 10-11, 997 A.2d 755; *Watts*, 2006 ME 109,

¶¶ 20-21, 907 A.2d 147. The juror did not describe any external misconduct or bias by any of the jurors, or any improper external influence or information that may have affected the verdict. Rather, the juror provided information about her own thought process and the interchange among the jurors in the jury room as they considered the evidence. *See* M.R. Evid. 606(b)(1)(A), (C); *Patterson*, 245 A.2d at 856 ("Evidence of what is said by jurors while deliberating upon a case will not be considered by the court to set aside the verdict.").

[¶13] We have stated that a court cannot inquire into or impeach a verdict based on a juror's statement "that she agreed to the verdict through fear and coercion and that the announced unanimous verdict was not her free and deliberate act," *Patterson*, 245 A.2d at 856, or that a juror "later [had] a change of heart," *Watts*, 2006 ME 109, ¶ 21, 907 A.2d 147. Similarly, we have recognized that the "weariness" of a juror is not a proper basis on which to set aside a verdict. *Patterson*, 245 A.2d at 856. Given this standard and the well-established law protecting jury verdicts in circumstances such as this, the juror's statements to the marshal could not open the door to any inquiry about the jury's deliberations. *See Ma*, 2010 ME 55, ¶ 10, 997 A.2d 755 ("The record is entirely devoid of any indication that the jury reached its verdict on any improper basis, and in the absence of any verifiable external manifestations of

such impropriety, we must accept the verdict as is." (quotation marks omitted)).

[¶14] Because there is no evidence of external or outside influence, bias, or misconduct, *see* M.R. Evid. 606(b)(2), the juror's statement that she felt pressured to return a guilty verdict falls squarely within the categories of evidence prohibited from use by Rule 606(b)(1). The court and the parties were therefore barred from exploring the matter further, and Leon was not deprived of a fair trial.

The entry is:

> Judgment affirmed.

---

Peter W. Leon, appellant pro se

Kathryn M. Slattery, District Attorney, and Susan J. Pope, Asst. Dist. Atty., Prosecutorial District 1, Alfred, for appellee State of Maine

York County Unified Criminal Docket docket number CR-2017-30046
FOR CLERK REFERENCE ONLY