MAINE SUPREME JUDICIAL COURT                      Reporter of Decisions
Decision:      2019 ME 164
Docket:        Fra-19-140; SRP-19-143
Argued:        November 6, 2019
Decided:       December 10, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## STATE OF MAINE

v.

## JAMES E. SWEENEY

GORMAN, J.

[¶1]  James E. Sweeney appeals from a judgment of conviction of murder, 17-A M.R.S. § 201 (2018), entered by the court (Franklin County, *Stokes, J.*) after a jury-waived trial.  Sweeney argues that the court erred in admitting certain testimony given by the mother of the woman[1] he killed; he also challenges his sentence.  After careful review, we affirm.

## I.  BACKGROUND

A.     Factual and Procedural History

[¶2]  The court made the following findings of fact, which are supported by competent record evidence from the trial.  *See State v. Fournier*, 2019 ME 28,

---

[1] Throughout this opinion, we identify her as "W.D."

¶ 2, 203 A.3d 801. In the summer of 2017, Sweeney and W.D. had been romantically involved with one another for over a decade. Witnesses who knew the couple described the relationship as generally "good," but in the spring of 2017, Sweeney became increasingly jealous and suspicious that W.D. was involved with other men. Even though W.D. and everyone who knew the couple assured Sweeney that his suspicions were unfounded, Sweeney was "unmoved."

[¶3] In March of 2017, W.D. woke in the middle of the night to find Sweeney standing in her bedroom with a gun in his hands. According to the trial court, the significance of that event was its demonstration that "[Sweeney] had reached [such] a level of desperation and panic in his relationship with [W.D.] that he was experiencing suicidal and possibly homicidal ideation."

[¶4] Three months later, in June of 2017, W.D. told Sweeney that their relationship was over but that he could remain living in her house, at least for a while. Early in the morning of July 11, 2017, while W.D. was asleep, Sweeney entered her bedroom and violently struck her face and head with a wooden bat. W.D. died as a result of that blunt force trauma.

[¶5] On August 23, 2017, Sweeney was indicted on one count of intentional or knowing murder, 17-A M.R.S. § 201(1)(A). He entered pleas of

not guilty and not criminally responsible by reason of insanity, *see* M.R.U. Crim. P. 11(a)(1), and waived his right to a jury trial, *see* M.R.U. Crim. P. 23(a).

[¶6]  At trial, which was held over the course of six days in January and February of 2019, the State called W.D.'s mother to testify about the March 2017 incident.  The mother stated that early in the morning on that day, W.D. had arrived at her house "nervous and scared and crying," telling her that Sweeney had "woken [W.D.] up with a gun pointing in her face."  The mother also testified that, although she did not know exactly what time the incident had occurred, "whenever it happened, [W.D.] came immediately when she got the gun [away from Sweeney] and brought it to my house."  Over Sweeney's objection, the court admitted the mother's testimony pursuant to the present sense impression exception to the rule against hearsay.  *See* M.R. Evid. 803(1). The court also ruled that, contrary to the State's position, the statement was not admissible pursuant to the excited utterance exception, M.R. Evid. 803(2).

[¶7]  On February 1, 2019, the court found Sweeney guilty of the murder and continued the matter for sentencing.

B.     Sentencing

[¶8]  At the sentencing hearing two months later, the court set the basic sentence at thirty-five years, citing the murder's "brutal, violent, unprovoked"

4

nature and the "classic signs of [domestic violence]" surrounding the crime, including Sweeney's "irrational" and "obsessive" jealousy.   *See* 17-A M.R.S. § 1252-C(1) (2016).[2]

[¶9]  The court then assessed "all other relevant sentencing factors, both aggravating and mitigating," in order to determine the final sentence.  17-A M.R.S. § 1252-C(2) (2016).  As mitigating factors, the court identified Sweeney's age,[3] his relatively limited criminal record, reliable employment history, and difficult childhood, and Sweeney's acknowledgment that he had killed W.D.  In addition, the court considered as a mitigating factor that Sweeney had been "experiencing some type of mental health crisis" in the months leading up to the murder.

[¶10]  As aggravating factors, the court found that the crime's effect on W.D.'s mother and daughter would be "excruciating"; that Sweeney's acts of domestic violence in the months before the murder had been attempts to intimidate, control, and threaten W.D.; and that Sweeney did not call 9-1-1 after

---

[2] Title 17-A M.R.S. § 1252-C (2016) has recently been amended and reallocated, though not in any way relevant to this appeal, as part of the recodification and revision to Title 17-A's sentencing provisions.  *See* P.L. 2019, ch. 113, §§ A-1 to -2, B-9 (emergency, effective May 16, 2019) (to be codified at 17-A M.R.S. § 1602).  All citations to the sentencing provisions in this opinion are to the statutes in effect at the time of the offense. *See State v. Parsons*, 626 A.2d 348, 351 (Me. 1993).

[3] Sweeney was fifty-six when he killed W.D. and fifty-nine at the time of the sentencing.

attacking W.D. After balancing the mitigating and aggravating factors, the court set the final sentence at thirty-eight years in prison.

[¶11] Sweeney timely appealed the judgment. *See* 15 M.R.S. § 2115 (2018); M.R. App. P. 2B(b)(1). Upon his application, the Sentence Review Panel granted Sweeney leave to appeal his sentence pursuant to 15 M.R.S. § 2151 (2018) and M.R. App. P. 20. *State v. Sweeney*, No. SRP-19-143 (Me. Sent. Rev. Panel June 27, 2019). Sweeney's direct appeal from the judgment of conviction and his sentence appeal are both before us now. *See* M.R. App. P. 20(h).

## II. DISCUSSION

### A. The Mother's Testimony

[¶12] Sweeney contends that the court erred in admitting W.D.'s mother's testimony about statements W.D. made to her soon after the incident in which Sweeney went into W.D.'s bedroom with a gun.

[¶13] We review a "court's decision to admit or exclude alleged hearsay evidence . . . for an abuse of discretion," *State v. Guyette*, 2012 ME 9, ¶ 11, 36 A.3d 916, and if a court's ruling is proper, we may affirm it "on grounds other than those stated by the trial court," *State v. Watson*, 2016 ME 176, ¶ 10, 152 A.3d 152. We review factual findings underlying a decision to admit or exclude evidence for clear error. *State v. Robinson*, 2001 ME 83, ¶ 10, 773 A.2d

445; *see* M.R. Evid. 104(a).  Furthermore, when a party does not move for additional findings of fact pursuant to M.R.U. Crim. P. 23(c), we "infer that the trial court found all of the facts necessary to support its judgment, to the extent that those assumed facts are supported by competent record evidence." *Fournier*, 2019 ME 28, ¶ 2, 203 A.3d 801.

[¶14]  "[S]ubstantial contemporaneity is the essence" of M.R. Evid. 803(1), *State v. Ryne G.*, 509 A.2d 1164, 1168 (Me. 1986), and we agree with the parties that the court erred in admitting the mother's testimony pursuant to the present sense impression exception to the rule against hearsay.  As we noted, however, the court specifically ruled that the statement was not admissible as an excited utterance.  Although the court's ruling contained no express factual findings relevant to the excited utterance exception, *see* M.R. Evid. 104(a), 803(2); *State v. Watts*, 2007 ME 153, ¶ 5, 938 A.2d 21, the State did not move for additional findings of fact, *see* M.R.U. Crim. P. 23(c); *State v. Legassie*, 2017 ME 202, ¶ 46, 171 A.3d 589.  Given this record, the court's conclusion that the mother's testimony was not admissible as an excited utterance was not clearly erroneous.  *See Fournier*, 2019 ME 28, ¶ 2, 203 A.3d 801; *Watts*, 2007 ME 153, ¶ 5, 938 A.2d 21.  Because the mother's testimony was neither a present sense impression nor an excited utterance, and was therefore not admissible

pursuant to those exceptions to the rule against hearsay, the court erred in admitting it.

[¶15]  Although the court erred in admitting the mother's hearsay testimony, the error here was harmless.  *See* M.R.U. Crim. P. 52(a).  An error is harmless when "it is highly probable that the error did not affect the factfinder's judgment."  *State v. White*, 2002 ME 122, ¶ 16, 804 A.2d 1146 (quotation marks omitted).  In addressing Sweeney's objections to the mother's testimony, the court stated that the testimony was "instructive on the relationship" between Sweeney and W.D., and the court also made clear that it was not using the testimony as propensity evidence.  On the issue of the relationship, however, the court had a great deal of additional and pertinent evidence, including a letter Sweeney wrote to W.D. after the gun incident, Sweeney's own description of that incident to two forensic examiners, and the testimony of other witnesses who discussed interactions they saw between Sweeney and W.D. and things they heard Sweeney say about W.D.  Given this abundant evidence, it is "highly probable," *id.*, that any error in the court's consideration of the mother's testimony did not affect the court's finding that Sweeney "had reached a level

8

of desperation and panic in his relationship with [W.D.]" in the months before the murder.[4]

B.      Sentencing

[¶16]  Sweeney's challenge to his sentence is based on the assertion that the court "double-counted" the factor of domestic violence in reaching its sentence.  There is simply no support in the record for that assertion.

[¶17]   Pursuant to 17-A M.R.S. § 1252-C (2016), which codified our decision in *State v. Hewey*, 622 A.2d 1151, 1154-55 (Me. 1993), a court imposing a sentence for murder follows a two-step process.[5]  First, the court "determines the basic term of imprisonment based on an objective consideration of the particular nature and seriousness of the crime."  *State v. Koehler*, 2012 ME 93, ¶ 33, 46 A.3d 1134.   Second, the court "determines the final period of incarceration based on the relevant aggravating and mitigating factors."  *Id.*  We review "a court's determination of the basic sentence de novo for

---

[4] We are also unpersuaded by Sweeney's unpreserved argument that the court's decision to admit, as substantive evidence, statements Sweeney made to the State's expert witness while admitting essentially identical statements Sweeney made to his own expert witness only as the basis for Sweeney's expert's opinion violated Sweeney's constitutional right to "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quotation marks omitted); *see also State v. Mitchell*, 2010 ME 73, ¶¶ 31-33, 4 A.3d 478.

[5] Title 17-A M.R.S. § 1252-C includes a third step—the determination of any period of suspension and probation—that is inapplicable to a sentence imposed for the crime of murder.  *See* 17-A M.R.S. § 1201(1)(A) (2016).

misapplication of legal principles and its determination of the maximum sentence for abuse of discretion." *State v. Waterman*, 2010 ME 45, ¶ 42, 995 A.2d 243.

[¶18] Contrary to Sweeney's suggestions, the court did not inappropriately consider the element of domestic violence at both step one and step two. In fact, the sentencing analysis was a model of fidelity to the law. In explaining the first step required in contemplating a sentence for Sweeney's crime, the court properly and correctly considered the objective elements of domestic violence in the crime itself. Sweeney killed the woman who had shared his life for over ten years. He killed her by striking her face and head with a wooden bat while she slept in a place where she should have been safe— her own home. The court committed no error in noting these objective factors in setting the basic sentence. *See State v. Nichols*, 2013 ME 71, ¶ 29, 72 A.3d 503.

[¶19] At step two, the court examined the history of the relationship between Sweeney and W.D., including Sweeney's attempts "to intimidate, to try to control, to try to threaten [W.D.], implicitly or explicitly." The court addressed this history as an aggravating factor, noting that "the most dangerous time in a relationship is when it is ending, it was clearly ending and

[Sweeney] could not deal with it." Considering Sweeney's history of domestic violence against W.D. as an aggravating factor was not error. *See State v. Lord*, 2019 ME 82, ¶ 35, 208 A.3d 781; *State v. Reese*, 2010 ME 30, ¶ 31, 991 A.2d 806.

[¶20] Finally, the court did not err in its weighing of the aggravating and mitigating factors at step two. The court's accounting of the crime's "excruciating" impact on W.D.'s family was firmly within the bounds of its discretion. *See Lord*, 2019 ME 82, ¶ 36, 208 A.3d 781; *State v. Freeman*, 2014 ME 35, ¶ 20, 87 A.3d 719.

The entry is:

Judgment affirmed.

---

Jeremy Pratt, Esq. (orally), and Ellen Simmons, Esq., Camden, for appellant James E. Sweeney

Aaron M. Frey, Attorney General, and Leanne Robbin, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Franklin County Unified Criminal Docket docket number CR-2017-642
FOR CLERK REFERENCE ONLY