MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2017 ME 210
Docket:       Yor-16-570
Argued:       October 11, 2017
Decided:      October 31, 2017

Panel:        SAUFLEY C.J.,* and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

WAYNE I. HALL

ALEXANDER, J.

[¶1]  Wayne I. Hall appeals from a judgment of conviction for two counts of criminal threatening with a dangerous weapon (Class C), 17-A M.R.S. §§ 209, 1252(4) (2016), entered by the trial court (York County, *O'Neil, J.*) following a two-day jury trial.  On appeal, Hall argues that the trial court abused its discretion by allowing testimony about statements of an unavailable witness, thereby violating his constitutional right to confront witnesses.[1]  Hall also argues that there was insufficient evidence to support

---

* Although not available at oral argument, Chief Justice Saufley participated in the development of this opinion.  *See* M.R. App. P. 12(a) (Tower 2016) ("A qualified justice may participate in a decision even though not present at oral argument."), *replaced with* M.R. App. P. 12(a)(1) (restyled M.R. App. P.) (effective for appeals commenced on or after Sept. 1, 2017).

[1]  The Sixth Amendment to the United States Constitution states, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . . to be confronted with the witnesses against him . . . ."  Article 1, § 6 of the Maine Constitution provides similarly: "In all criminal

2

the guilty verdicts on the two counts of criminal threatening with a dangerous weapon.  We affirm the judgment.

## I.  CASE HISTORY

[¶2]  Viewing the evidence in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt.  *See State v. Morrison*, 2016 ME 47, ¶ 2, 135 A.3d 343.

[¶3]  On December 26, 2015, the two men who were the complaining witnesses in this matter went to Beech Ridge Road in North Berwick for one of the men to remove his tree stand from his father-in-law's property.  The men parked their pickup truck and trailer—which had their four wheelers on it— in the cul-de-sac between the father-in-law's driveway and a neighbor's driveway.

[¶4]  After retrieving the tree stand, the men rode their four wheelers on the property for a few hours.  When they returned to the cul-de-sac, they saw a green van blocking access to the ramps for their trailer.  One man gestured to the driver to make contact, at which point the driver opened the door and stated, "I'm going to fucking kill you."  Hall was the driver of the van.

---

prosecutions, the accused shall have a right . . . . [t]o be confronted by the witnesses against the accused . . . ."

[¶5]    Hall stepped out of the van and appeared disheveled and intoxicated.  He then got back in the van and began slowly driving out of the cul-de-sac stating to the men again, "I'm going to kill you, I'm going to fucking kill you."  As Hall drove away, the men observed a handgun come out of the driver's side window, and shots were fired at them.  The men were afraid for their lives and feared that they might be shot.  They called 9-1-1, and, after meeting with a law enforcement officer, began looking for the van.  They then saw Hall stumbling into a residence.

[¶6]  Shortly thereafter, officers of the North Berwick Police Department arrested Hall at that residence, which was his mother's home.  They then searched for the green van and the firearm.  The officers located the van parked behind a garage.  The driver's side window was still rolled down, and the officers observed a gun holster and ammunition inside the van.  The officers eventually located the firearm in another vehicle on the property.

[¶7]   On December 28, 2015, the State filed a four-count complaint charging Hall with two counts of criminal threatening with a dangerous weapon (Class C), 17-A M.R.S. §§ 209, 1252(4); and two counts of reckless conduct with a dangerous weapon (Class C), 17-A M.R.S. §§ 211, 1252(4) (2016).  A York County grand jury returned an indictment reflecting the same

4

four counts, and adding a fifth count for criminal OUI (Class D), 29-A M.R.S. § 2411(1-A)(A), (5) (2016).

[¶8]  A two-day jury trial was held on November 28-29, 2016.  Prior to trial, the State filed a motion in limine seeking the admission of statements made by Hall's former girlfriend, who was not available to testify at trial.[2]  In an interview, the former girlfriend had told officers that Hall appeared to have his .357 Magnum revolver when he left the home, that she heard about five gun shots shortly after he left, and that Hall returned home without that gun.[3]  The court denied the State's motion, concluding that the statements would be "extremely incriminatory" without Hall having the ability to cross-examine his former girlfriend.  The court warned counsel that questioning law enforcement witnesses as to why they decided to act in a certain way in their investigation could open the door to the introduction of the excluded evidence.

[¶9]  At trial, during the State's direct examination, one of the investigating officers testified that the firearm recovered from the scene

[2]  The State noted that Hall's former girlfriend was in "parts unknown, California and then Hawaii," and that it had been unable to locate her to bring her back.

[3]  The State also asserted that the former girlfriend had informed officers that Hall had initially come to her with his gun and asked her for a ride down the road to go kill someone, before ultimately leaving on his own in his green van.  The State did not seek admission of these additional statements.

contained five spent shell casings and one loaded shell. He also testified that the bullets located in the green van were of the same type found in the firearm. During cross-examination—on an issue not raised on direct—Hall asked the officer about his "understanding" of the number of shots fired during the incident. The following exchange occurred:

> Hall: The—the evidence in this case, as I understand it, is that there were three shots fired. Is that your understanding also?

> Officer: My understanding is it was probably more than three shots fired.

> Hall: Okay. And is that from—is that based upon the fact that you found four empty casings in the gun?

> Officer: It was based upon people that we spoke with.

> Hall: Okay. Well, the testimony of [one victim] was that there were three shots fired and I believe [the other victim] as well. Is that—did they say something different from that that you are aware of?

> Officer: Not to me, no.

> Hall: But you're under the impression that there were four shots fired?

> Officer: At least, yes.

> Hall: Possibly more?

> Officer: Four to five maybe, yes.

6

[¶10] Following cross-examination, the State requested a sidebar to discuss the officer's testimony. The State noted that the officer was asked several questions about his "understanding" of the number of shots fired and asserted that the officer's knowledge of the number of shots fired "[came] from his speaking to [the former girlfriend], who told him that [Hall] left with a gun, she heard two or three shots and then a short period of time two more shots after that."

[¶11] The court found that Hall's questions on cross-examination had opened the door to reference to the former girlfriend's statements. The court explained that the "[S]tate is entitled to get the explanation before the jury about why he thinks there were five shots being fired" to avoid the impression that the officer simply "made up" the number of shots fired.

[¶12] On redirect, the following exchange between the State and the officer occurred:

> State: [Officer], I just want to ask you a couple of questions. So on—on cross you were asked about your—understanding of the number of shots fired?
>
> Officer: Yes.
>
> State: All right. And—and at that point you indicated that it might have been four or five?
>
> Officer: Yes.

State: All right.  And was—was your understanding of that, was that based upon speaking to the defendant's girlfriend?

Officer: Yes.

. . . .

State: All right.  And did she tell you that—that on that day that she saw the defendant with a gun?

Officer: Yes.

State: And did she tell you that she saw him leave?

Officer: Yes.

State: And did she tell you that she heard two shots followed by a couple minutes later two to three more shots?

Officer: Yes.

State: And did she tell you that when he returned that there was no gun?

Officer: Yes.

State: So that would have been maybe five shots?

Officer: Yes.

State: How many casings were in the revolver when you checked?

Officer: There was five empty and one full.

Hall did not object to any of these questions.

[¶13]  Following redirect, the court immediately instructed the jury that it could not consider the former girlfriend's statements for their truth—whether there were actually four or five shots fired—but could consider the statements in assessing the weight to give the officer's testimony.  Hall did not object to this instruction and did not request that any further instructions be given.

[¶14]   The jury found Hall guilty on the two counts of criminal threatening with a dangerous weapon and not guilty on the two counts of reckless conduct with a firearm and the one count of criminal OUI.  The court entered a judgment in accordance with the jury verdict and sentenced Hall to four years' incarceration with all but ten months suspended and two years of probation.  Hall timely appealed.

## II.  LEGAL ANALYSIS

[¶15]  We review a trial court's decision to admit evidence for an abuse of discretion or clear error, *see State v. Mooney*, 2012 ME 69, ¶ 9, 43 A.3d 972, and review whether a defendant was denied the right of confrontation de novo, *see State v. Abdi*, 2015 ME 23, ¶ 23, 112 A.3d 360.  Hall contends that the trial court abused its discretion and violated his constitutional right to confront witnesses presented against him by allowing the officer to reference

Hall's former girlfriend's statements as the basis for the officer's belief that more than three shots were fired.

A.    Confrontation Clause

[¶16]  "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. Const. amend. VI; *see also* Me. Const. art. I, § 6 ("In all criminal prosecutions, the accused shall have a right . . . . [t]o be confronted by the witnesses against the accused . . . ."). When a testimonial statement, such as a response to a police interrogation, is offered at a trial in which the declarant of the statement does not appear, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."  *Crawford v. Washington*, 541 U.S. 36, 68 (2004); *see also State v. Gorman,* 2004 ME 90, ¶ 50, 854 A.2d 1164.

[¶17]  The Confrontation Clause is not implicated by non-hearsay statements of an unavailable witness admitted for a purpose other than to prove the truth of the matter asserted.  *See Tennessee v. Street*, 471 U.S. 409, 414 (1985).  Thus, a statement offered to show the state of mind of the listener, not the declarant, or to show the cause of some other act by the

10

listener, is not hearsay. *State v. Gifford*, 595 A.2d 1049, 1052-53 (Me. 1991); *see also* M.R. Evid. 801(c).

B.     Opening Door to Admission of Excluded Evidence

[¶18]   A court does not abuse its discretion in admitting previously excluded evidence to rebut suggestions in defense questioning that are inconsistent with the excluded evidence or attack the credibility of properly admitted testimony that was based on the excluded evidence. *State v. Ifill*, 574 A.2d 889, 891 (Me. 1990);[4] *see also State v. Anglin,* 2000 ME 89, ¶ 7-8, 751 A.2d 1007; *State v. Donovan*, 1997 ME 181, ¶ 8, 698 A.2d 1045.

[¶19]   When a defendant elicits testimony related to previously excluded evidence during cross-examination or through presentation of the

---

[4] In *State v. Ifill*, 574 A.2d 889 (Me. 1990) (*Ifill II*), the results of a chemical field sobriety test had been determined inadmissible by a prior Law Court opinion, *State v. Ifill*, 560 A.2d 1075 (Me. 1989) (*Ifill I*).  In the *Ifill II* trial, the trial court warned defense counsel that cross-examination of law enforcement witnesses on the extent and adequacy of their sobriety testing and evaluation prior to Ifill's arrest could open the door to allowing the State to introduce evidence that the excluded sobriety test had been used in making the decision to arrest Ifill.  *Ifill II*, 574 A.2d at 891. "Despite that warning, Ifill's counsel extensively cross-examined [a law enforcement officer] on his failure to administer to Ifill what were referred to as objective field sobriety tests." *Id*.  On redirect examination, the trial court allowed the State to present evidence that the excluded test had been given, but without reference to the test results.  *Id*.  On appeal, we affirmed.  *Id*.

The facts here are similar: evidence was excluded; the trial court warned that defense questioning on issues related to the excluded evidence could open the door to admission of the evidence or part of it; defense cross-examination opened the door to the excluded evidence by suggesting a lack of basis for the officer's statement that more than three shots were fired; and the court allowed reference to the former girlfriend's statement that she heard five shots but limited the jury to considering that evidence to determine the credibility of the officer's statement about the number of shots fired.

defense case, and the testimony, as delivered, is inconsistent with the excluded evidence or affects the credibility of the State's case, a court does not abuse its discretion in finding that the defendant has "opened the door" to the excluded evidence and permitting the State to conduct limited questioning for the purpose of responding to the defendant's challenge. *See Ifill,* 574 A.2d at 891; *see also State v. Ruest*, 506 A.2d 576, 577 (Me. 1986); *State v. Terrio*, 442 A.2d 537, 541 (Me. 1982).

[¶20]  Here, the trial court appropriately excluded law enforcement testimony about the former girlfriend's statements but warned both parties that questioning law enforcement witnesses as to why they decided to act in a certain way could open the door to excluded evidence.  Despite the court's warning, Hall cross-examined the officer on his understanding of the number of shots fired, an understanding based on the former girlfriend's statements.

[¶21]  The court properly found that Hall had opened the door to the previously excluded statements and allowed the State, in its redirect, to clear up any false impression created by Hall's questioning that the officer just "made up" that number.  *See Ifill*, 574 A.2d at 891.  The court appropriately limited the State to only those statements clarifying the officer's understanding of the number of shots fired, the issue that Hall had opened the

12

door to, and excluded all other incriminatory statements made by Hall's former girlfriend.

[¶22] The court's limiting instruction to the jury specifically directed that the statements could not be considered for their truth—whether Hall actually fired four or five shots—but could be considered in assessing the weight to give to the officer's testimony. *See State v. Dolloff*, 2012 ME 130, ¶ 55, 58 A.3d 1032 ("Juries are presumed to have followed jury instructions, including curative instructions."). Under these circumstances, the court did not abuse its discretion by admitting the statements indicating that Hall's former girlfriend was aware that Hall had left with a gun and that she then heard four or five shots fired.

C.    Obvious Error Review

[¶23] Hall argues that, by allowing the statements that his former girlfriend saw him leave the home with a gun and then saw Hall return home without a gun, after hearing shots fired, the court went beyond what was necessary to address the credibility of the officer's statements regarding the officer's understanding of the number of shots fired. Hall asserts that these statements, referencing his leaving the home with a gun and returning without a gun, violated his confrontation clause rights.

[¶24]  We agree that the former girlfriend's statements reporting that Hall left the home with a gun and returned without a gun were not relevant to the issue of the number of shots he was believed to have fired.  However, Hall failed to preserve the issue.

[¶25]  At the trial, when the court could have addressed any problem, Hall did not object to the officer's testimony regarding the former girlfriend's statements, and he did not object to or suggest any amendment to the limiting instruction given by the court promptly after the officer's rebuttal testimony. Accordingly, Hall's arguments about these statements, first presented on appeal, must be considered by applying the obvious error standard of review. M.R.U. Crim. P. 52(b); M.R. Evid. 103(e); *see also State v. Pabon*, 2011 ME 100, ¶ 18, 28 A.3d 1147.

[¶26]  In *State v. Fahnley*, 2015 ME 82, ¶ 15, 119 A.3d 727, we stated: "For us to vacate a conviction based on the obvious error standard of review, 'there must be (1) an error, (2) that is plain, and (3) that affects substantial rights.  If these conditions are met, we will exercise our discretion to notice an unpreserved error only if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings.'"  *Id.* (quoting *State v. Lovejoy*, 2014 ME 48, ¶ 19, 89 A.3d 1066).

14

[¶27]  We are particularly cautious in our review for error that is unpreserved in appeals from jury verdicts.  "The judicial deference owed jury decisions demands an appellate standard of review more rigorous than one narrowly focused on whether it was reasonably possible that the jury would have returned a different verdict."  *Pabon,* 2011 ME 100, ¶ 24, 28 A.3d 1147.

[¶28]  When obvious error is alleged, the party asserting error bears the burden of demonstrating to us a reasonable probability that, but for the claimed error, the result of the proceeding would have been different.  *Id.* ¶¶ 34-35.  The evidence at trial was that the two complaining witnesses identified Hall as the individual who had fired shots at them, they later identified Hall entering the home where Hall was found, and the green van and the gun containing five spent shells were found on that property.  Given this evidence, Hall has not demonstrated a reasonable probability that, but for the unpreserved error in admitting the rebuttal testimony, the verdict would have been different, or that the unpreserved error was plain, affected his substantial rights, or seriously affected the fairness, integrity, or public reputation of his trial.  *Fahnley*, 2015 ME 82, ¶ 15, 119 A.3d 727; *Pabon*, 2011 ME 100, ¶¶ 29, 34-35, 28 A.3d 1147.

D.      Sufficiency of the Evidence

[¶29]  Hall also contends that there was insufficient evidence to sustain a guilty verdict on the two charges of criminal threatening with a dangerous weapon, 17-A M.R.S. §§ 209, 1252(4).  To decide whether the record contains sufficient evidence to support a criminal defendant's conviction, we view the evidence in the light most favorable to the State to determine whether the fact-finder could rationally find each element of the offense proved beyond a reasonable doubt.  *State v. Sanchez*, 2014 ME 50, ¶ 8, 89 A.3d 1084; *State v. Woodard*, 2013 ME 36, ¶ 19, 68 A.3d 1250.

[¶30]  Given that both complaining witnesses testified that Hall pointed a firearm at them, that he fired shots in their direction, and that as a result the men feared that they would be shot, the jury could have rationally found every element of both counts of criminal threating with a dangerous weapon proved beyond a reasonable doubt.  Because there was sufficient evidence in the record supporting the jury verdict, we affirm the judgment.

The entry is:

Judgment affirmed.

Amy McNally, Esq. (orally), Woodman Edmands Danylik Austin Smith & Jacques, P.A., Biddeford, for appellant Wayne I. Hall

Kathryn L. Slattery, District Attorney, and Susan J. Pope, Asst. Dist. Atty. (orally), Prosecutorial District #1, Alfred, for appellee State of Maine

York County Unified Criminal Docket docket number CR-2015-662
FOR CLERK REFERENCE ONLY