MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 138
Docket:       Yor-18-299
Argued:       March 4, 2019
Decided:      August 20, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:     SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Dissent:      ALEXANDER, J.

STATE OF MAINE

v.

PETER L. ROBBINS

MEAD, J.

[¶1]  Peter L. Robbins appeals from a judgment of conviction for unlawful sexual touching (Class D), 17-A M.R.S. § 260(1)(C) (2018), and assault (Class D), 17-A M.R.S. § 207(1)(A) (2018), entered by the trial court (York County, *Driscoll, J.*) following a jury trial.  Robbins contends that the court erred in several of its evidentiary rulings, including allowing the State to cross-examine him concerning prior probation violations, declining to allow him to refresh a witness's recollection with a document that the witness had not authored, and barring him from eliciting testimony from a witness concerning the victim's reputation for truthfulness.  We agree with Robbins that the court erred in allowing the State to introduce improper character evidence through its inquiry

into multiple violations of his unrelated federal probation, and we conclude that the prejudice he suffered as a result of that error, when combined with the effect of prosecutorial misconduct committed during the State's cross-examination of him, deprived Robbins of a fair trial. Accordingly, we vacate the judgment.

## I. BACKGROUND

[¶2] Viewing the evidence in the light most favorable to the State, the jury rationally could have found beyond a reasonable doubt that on December 12, 2008, Robbins, then age thirty-two, touched the then-twelve-year-old victim's genitals over her clothing and made her touch his genitals over his clothing while the victim was spending the night with Robbins's niece. *See State v. Perkins*, 2019 ME 6, ¶ 3, 199 A.3d 1174. The next morning the victim's parents took her to the police station to make a report.

[¶3] Robbins was summonsed for assault (Class D), 17-A M.R.S. § 207(1)(A), and ordered to make a court appearance on February 5, 2009. That appearance was continued when Robbins wrote to the court to advise it that he was in the custody of federal probation authorities, probation having been imposed as a result of his 2004 federal conviction for bank robbery.

Robbins was eventually arraigned on the assault charge and pleaded not guilty; the matter was then transferred to the Superior Court for a jury trial.[1]

[¶4]  In July 2009, Robbins was indicted on the original assault charge and an additional charge of unlawful sexual touching (Class D), 17-A M.R.S. § 260(1)(C).  After counsel entered an appearance, Robbins failed to appear for arraignment on the indictment on September 18, 2009, and the court (*Brennan, J.*) issued a warrant for his arrest.  The warrant remained outstanding until Robbins returned from Italy, where he had lived for seven years beginning in September 2009.  In April 2017, Robbins, then living in Colorado, filed a motion to vacate the warrant, which the court (*O'Neil, J.*) denied.  After arraignment on the 2009 indictment was continued several times, Robbins appeared for arraignment in February 2018, pleaded not guilty, and was released on an unsecured bond (*Fritzsche, J.*).

[¶5]  At a trial held on June 25-26, 2018, the jury returned verdicts of guilty on both counts; the court then entered a judgment and commitment imposing a sentence of ten months' imprisonment for unlawful sexual touching and a concurrent thirty-day jail term and a $300 fine for assault.  Robbins appealed, and the sentence was stayed pending our decision.

---

[1]  This process occurred before the rule changes creating a unified criminal process were promulgated.  *See* M.R.U. Crim. P. 1(e).

## II.  DISCUSSION

A.    Prosecutorial Misconduct

[¶6]  Although the issue was not preserved at trial or raised on appeal, we examine the State's cross-examination of Robbins to determine whether prosecutorial misconduct occurred, and, if so, whether it contributed to Robbins being deprived of a fair trial.  *See* M.R.U. Crim. P. 52(b); *State v. Dolloff*, 2012 ME 130, ¶ 76, 58 A.3d 1032 ("Our ultimate task in reviewing for . . . obvious error is to determine whether [the defendant] received a fair trial.").

[¶7]    During Robbins's cross-examination concerning the federal probation violations, the following exchange occurred:

PROSECUTOR: The rules [against drinking while on probation] didn't apply?

ROBBINS: I tend to think that because alcohol is legal, it was kind of like bending the rules.

Q: But the rules told you, you couldn't drink.

A: But I don't understand what this has to do with anything.

Q: It has to do with whether or not anybody should believe a word you're saying in this courtroom today.

A: No—well, that's completely different.   It's a different—it was a different case; it was a different time in my life.

Q: A different time in your life?

A: Yes.  I was very depressed from losing—

Q: This is November of 2008, you were sexually assaulting this girl December 2008.

A: Allegedly—allegedly.

Q: *No, no there is no—*

A: Yes.

Q: *—allegedly here.*

A: It is allegedly.

Q: *There is testimony on the record to that effect, sir.*

A: I'm sorry, when's my lawyer going to speak up, please?  What's going on here.  This is crazy.

PROSECUTOR: I don't have anything further.

COURT: Thank you.

PROSECUTOR: I'm done with him.

(Emphasis added).

[¶8]  Defense counsel did not object, and the court took no action in response to that exchange.  Accordingly, our review is for obvious error.  *State v. Hassan*, 2013 ME 98, ¶ 32, 82 A.3d 86; *Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032; *see* M.R.U. Crim. P. 52(b); M.R. Evid. 103(d).  Applying that standard of review, we will not vacate Robbins's conviction unless "there is

6

(1) an error, (2) that is plain, and (3) that affects substantial rights. Even if these three conditions are met, we will set aside [the] jury's verdict only if we conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032 (citations and quotation marks omitted). We will not set a jury verdict aside "lightly," and so an error leading to that result must work a "serious and manifest injustice." *Id.* ¶ 39.

[¶9] We conclude that a plain error occurred here. The only evidence from which the jury could find that Robbins committed the crimes charged came from the testimony of the victim—her credibility was the heart of the State's case. The prosecutor's questions to Robbins—presented in the form of assertions—explicitly conveyed his personal opinion to the jury that the victim had told the truth, and that the jury did not need to decide that question for itself: "[Y]ou were sexually assaulting this girl [in] December 2008. . . . [T]here is no . . . allegedly here. . . . There is testimony on the record to that effect . . . ." *See State v. Williams*, 2012 ME 63, ¶ 46, 52 A.3d 911 ("At trial, an attorney is prohibited from commenting on his or her personal opinion as to the credibility of a witness.").

[¶10]  In *Dolloff*, we said that "[i]njecting personal opinion regarding the . . . credibility of . . . [a] witness[]," or "vouching" for a witness by "[u]sing the authority or prestige of the prosecutor's office," "will almost always be placed into the category of misconduct."  2012 ME 130, ¶ 42, 58 A.3d 1032 (quotation marks omitted); *see id.* ¶ 36 ("An error is plain if the error is so clear . . . that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." (alteration, citation, and quotation marks omitted)).

[¶11]  The third element of the obvious error test requires us to determine if there is "a reasonable probability that the error affected [Robbins's] substantial rights.  An error affects a criminal defendant's substantial rights if the error was sufficiently prejudicial to have affected the outcome of the proceeding."  *Id.* ¶ 37 (alteration, citation, and quotation marks omitted); *see State v. Pillsbury*, 2017 ME 92, ¶ 18, 161 A.3d 690.  We do so being mindful that "[w]hen a prosecutor's statement is not sufficient to draw an objection, particularly when viewed in the overall context of the trial, that statement will rarely be found to have created a reasonable probability that it affected the outcome of the proceeding."  *Dolloff*, 2012 ME 130, ¶ 38, 58 A.3d 1032.

[¶12] Here, the jury could have reasonably understood the prosecutor to say that the ultimate issue had been settled and the jury's core function performed when he stated to Robbins as fact that "you were sexually assaulting this girl [in] December 2008. . . . [T]here is no . . . allegedly here." That statement on its face is, of course, patently wrong—it is elemental that the State's accusation that Robbins had sexually assaulted the victim *was* an allegation unless and until the jury assessed the victim's credibility and decided for itself that the State had proved the truth of its charge beyond a reasonable doubt. *See United States v. Sarault*, 975 F.2d 17, 21 n.5 (1st Cir. 1992) ("One of the most fundamental tenets of our system of justice is the presumption of innocence."); Alexander, *Maine Jury Instruction Manual* § 6-7 at 6-14 (2018-2019 ed.).

[¶13] In obscuring the presumption of innocence by framing Robbins's guilt as a fact rather than as an open question for the jury to decide, thereby shifting the burden of proof to Robbins on the ultimate issue—in effect requiring Robbins to prove that the prosecutor's assertion was false—the prosecutor committed, and the court failed to correct, an error that had a "reasonable probability" of being "sufficiently prejudicial to have affected the outcome of the proceeding." *Dolloff*, 2012 ME 130, ¶ 37, 58 A.3d 1032

(quotation marks omitted); *see id.* ¶ 42 (stating that "[s]hifting the burden of proof on an issue to the defendant" "will almost always be . . . 'misconduct'").

[¶14]   Because the first three elements of the obvious error test are satisfied, we must decide finally whether the error "seriously affect[ed] the fairness and integrity or public reputation" of the trial.  *Id.* ¶ 35 (quotation marks omitted).  In this unusual situation, Robbins, confronted by a prosecutor stating as fact that he had committed the crime for which he was on trial, implored his lawyer to become involved.  His lawyer did not, nor did the court. From this, the jury may have concluded that no one participating in the trial apart from Robbins himself disagreed that the truth of the victim's testimony— and thus Robbins's guilt—had been established.  That possibility was not purely theoretical, given that during its deliberations the jury sent out a note asking the court to "reinstruct the jury that 100 percent positive is not the requirement to convict."  It is possible that the jury decided that because the prosecutor, "cloaked with the authority of the State," *State v. Pratt*, 2015 ME 167, ¶ 15, 130 A.3d 381, told them that Robbins was guilty, and no one other than Robbins objected to or corrected that statement, then the jury should reach the same conclusion.

[¶15]  That potential impression was reinforced during the State's closing argument, when the prosecutor said "let's talk about what we know" and recited the victim's testimony, ending the recitation with, "Now that's the story. That's the evidence.  That's the testimony."  In concluding his argument, the prosecutor did what we have cautioned prosecutors not to do, urging the jury that "[the victim] can't do any more than what she's done.  You're the only ones that can do something.  Find him guilty."  *See Dolloff*, 2012 ME 130, ¶ 68, 58 A.3d 1032 ("In exhorting the jury to convict, which is not, standing alone, misconduct, references to doing justice by conviction should be avoided.").

[¶16]  Although our review for obvious error is exacting when a jury has rendered a verdict, *see State v. Hall*, 2017 ME 210, ¶ 27, 172 A.3d 467, we conclude on this record that prosecutorial misconduct plainly occurred, the misconduct affected Robbins's substantial rights, and the error seriously affected the fairness and integrity of the trial.  *See Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032.

B.  Evidentiary Rulings

[¶17]  The State successfully sought to introduce at trial Robbins's prior conviction for bank robbery and his federal probation violations stemming from that conviction.  These two categories of evidence implicate Maine Rules

of Evidence 609, 608, and 404. We address each of these rules, and their implications for the admissibility of the robbery conviction and probation violation adjudications, in turn.

1.  Rule 609(a)

[¶18] Rule 609(a) of the Maine Rules of Evidence provides, in pertinent part:

> **In general.** Evidence of a criminal conviction offered to impeach a witness's character for truthfulness must be admitted if its probative value outweighs its prejudicial effect on a criminal defendant . . . .

(a)  Robbery Conviction

[¶19] Impeachment of a witness's credibility by inquiry regarding a prior conviction should always be reviewed with the court before presentation to the jury, and inquiry is limited to the fact of the conviction. Inquiry into the circumstances leading to the conviction is ordinarily improper. *See State v. Chase*, 490 A.2d 208, 211 (Me. 1985) ("[I]t is only the fact of conviction, and not the details of the offense, which is admissible." (quotation marks omitted)). Here, the court initially—and appropriately—addressed the possibility of impeachment by conviction in considering and granting Robbins's motion in limine insofar as Robbins sought to exclude the bank robbery conviction itself.

12

The court undertook the balancing test required by Rule 609(a)[2] and found that "it would be highly prejudicial for [the robbery conviction] to come in. . . . I think it would sway the jury." That determination was not an abuse of the court's discretion. *See State v. Burton*, 2018 ME 162, ¶ 20, 198 A.3d 195. The court later changed its ruling, however, and allowed evidence of the conviction to be presented to the jury during the State's cross-examination of Robbins.[3] We address the later admission of the robbery conviction in our discussion of Rule 404(a)(2), *see infra* ¶¶ 27-32.

(b) Probation Violations

[¶20] During the discussion of Robbins's motion in limine seeking to exclude evidence of his bank robbery conviction, the State, in addition to arguing that the conviction itself was admissible, raised the subject of Robbins's multiple adjudicated violations of his probation, arguing that "those . . . appear

---

[2] The balancing test mandated by Rule 609(a), referred to as a "'reverse Rule 403' test" by the Restyling Note, requires that prior convictions be admitted pursuant to the rule only if the court determines that "their probative value as to credibility outweighs any danger of unfair prejudice to a criminal defendant." M.R. Evid. 609 Restyling Note, Nov. 2014.

[3] The later admission of the robbery conviction was allowed after the court found that Robbins opened the door to character evidence by referring to his good family and asserting that the accusations of sexual misconduct were "horrific for someone like me," coupled with his admission to the probation violations. The court did not explicitly readdress its earlier findings that the conviction was highly prejudicial and would sway the jury.

to be convictions because he pleads guilty to these violations. They're not admissions."

[¶21] To the extent that the court relied on Rule 609(a) in admitting Robbins's probation violation adjudications arising from the conviction, that ruling was erroneous because the Rule permits, in certain circumstances, the admission of "[e]vidence of a criminal *conviction*" (emphasis added), and Robbins's probation violation adjudications were not criminal convictions. Rule 609 specifies that a qualifying "conviction" results from the commission of a "crime." M.R. Evid. 609(a)(1)-(2). It does not encompass a probation violation, which is not a crime at all standing alone, but rather is conduct that results in the implementation of punishment previously imposed as part of an underlying criminal judgment. *See* 17-A M.R.S. § 3(1) (2018) (stating that "[n]o conduct constitutes a crime unless it is prohibited [by statute]"); 17-A M.R.S. § 1201(1) (2018) ("A person who has been convicted of a crime may be sentenced to a . . . sentencing alternative that includes a period of probation . . . ."); 17-A M.R.S. § 1206(7-A) (2018) ("Upon a finding of a violation of probation, the court may vacate . . . the suspension of execution as to imprisonment or fine specified when probation was granted . . . ."). Stated

14

simply, a probation violation adjudication does not constitute a conviction for the purposes of Rule 609.

2.    Rule 608(b)

[¶22]  To the extent the court may have relied on M.R. Evid. 608(b) to admit evidence of Robbins's probation violations, the Rule provides that

> [e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  The court may, on cross-examination, allow a party to inquire into specific instances of a witness's conduct if they are probative of the character for truthfulness or untruthfulness of . . . [t]he witness.

As with Rule 609, "bad act" evidence under Rule 608(b) can be highly prejudicial and should always be vetted with the court before presentation to the jury.  Here, the State properly requested a pretrial ruling in limine concerning the admissibility of Robbins's probation violations.

[¶23]  On direct examination, Robbins testified that he drank beer on the night that he allegedly assaulted the victim but not "excessively," saying, "I don't drink excessively; I was not intoxicated."  Following Robbins's testimony on direct examination, the State requested a sidebar conference to discuss the allowable scope of cross-examination.  The State asserted that Robbins had opened the door to inquiry about the alcohol-related probation violations by

maintaining that he had not been drinking "excessively" on the night of the alleged assault. Without elaboration, the court ruled that "[i]t's fair game . . . [t]he door's open on that."

[¶24] Robbins subsequently admitted that he had violated his probation by drinking, and he volunteered that he had also violated probation by dating his then-girlfriend, an ex-felon. When the State questioned him about lying to his probation officer, Robbins responded by asking, "In what way?" and the prosecutor replied,

> [w]ell, *your probation was violated six different ways. You were violated* for failing to abstain from alcoholic beverages in August of 2008. *You were violated* for associating with a known felon without permission, your girlfriend in August of 2008. *You were also violated* for failing to provide truthful answers to a probation officer in May of 2008. You then failed to provide truthful information to a probation officer in August of 2008. You have failed to abstain from [a]lcoholic beverages in November of 2008, and you again, failed to provide truthful answers to a probation officer in September of 2008. Correct?

(Emphasis added). Robbins answered, "It was a difficult time."

[¶25] Rule 608(b) allows inquiry into "specific instances of a witness's conduct if they are probative of the character for truthfulness or untruthfulness." The manner of the prosecutor's inquiry here is problematic in two regards. First, the inquiry was not focused on Robbins's *conduct* as it related to his character for telling or not telling the truth; rather, the inquiry

emphasized the fact that Robbins's conduct led to *adjudicated violations* of his federal probation.[4]   Second, the fact that Robbins failed to abstain from alcoholic beverages and had contact with his girlfriend while on probation has, at best, a tenuous connection to his character for truthfulness or untruthfulness.

[¶26]  Furthermore, concerning the probation violations, the prosecutor argued to the court when discussing Robbins's pretrial motion in limine seeking to exclude evidence of his robbery conviction that "[Robbins's] proclivity to do as he chooses and not follow the rules I think is important that the jury hear about."   Thus, through the vehicle of Robbins's "convictions" for violating probation, *see supra* ¶¶ 20-21, the prosecutor was in effect able to do what he expressly sought to do but was prevented from doing by the court's earlier ruling—he was able to get character evidence before the jury suggesting that Robbins was simply a bad person who did not follow society's rules.  Because Rule 608(b) is cabined to admitting evidence of specific instances of a witness's conduct for the limited purpose of establishing character for truthfulness or untruthfulness, the wholesale introduction of *adjudications* of probation

---

4 Although the prosecutor did not use the word "adjudicated," it is clear from his repeated use of the passive voice (e.g., "you were violated") that he was using jargon referring to adjudications.

violations in the federal court proceedings—irrelevant for that limited purpose but highly prejudicial to Robbins—was error.

3.    Rule 404

[¶27]  Maine Rule of Evidence 404(a)(1) embodies the well-established principle that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with [that] character or [character] trait."  An exception, at issue here, is set out in subsection (a)(2):

> (2) *Exception for a defendant in a criminal case.*  A defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it.

[¶28]  In describing his police interview, Robbins told the jury that the detective who interviewed him "[has] known who I am for a long time, and he knows I come from a good family"; he said that he asked the detective, "[W]hy does this keep happening, why do people keep saying things about me that aren't true? . . . [I]t was horrid, horrific for someone like me."  During the State's cross-examination, Robbins reiterated that "[t]his is a serious, but false accusation that has offended me deeply because of who I am and how I was raised."

[¶29]   On redirect examination, Robbins said that the probation violations were the result of life circumstances, including depression and "a little bit of an addiction."  The court convened a sidebar conference where the State argued that the door had been opened to evidence of the bank robbery conviction because Robbins first maintained that the criminal charge was "horrific for someone like me," and then attributed the probation violations to a drug addiction.  Robbins's counsel did not object.[5]  The court ruled that "it's a bridge too far at this point in time . . . [Robbins's] testimony has opened a door on questions . . . with regard[] to the bank robbery, and I think it comes in at this point. . . . [I]t's got to come in now."  When the State resumed its cross-examination, Robbins admitted to the jury that in September 2004 he had been convicted of bank robbery in federal court in New Hampshire.

[¶30]   The State implicitly argues, as it did at trial, that Robbins's statements constituted evidence of a character trait, and that the probation adjudications and the robbery conviction were admissible as rebuttal pursuant to Rule 404(a)(2).  To be clear, Robbins never actually claimed that he was, generally speaking, a good person; he referred simply to coming from a good

---

[5] To the contrary, following Robbins's admission to the probation violations his attorney responded to the State's argument at sidebar by saying, "If you want to ask him about whether or not he's a bank robber, be my guest."

family and said that the "false accusation" and criminal charges were "horrific for someone like me" and that they "offended [him] deeply." Following these assertions, the State sought, and the court agreed, to open the door to the admission of evidence of the probation violation adjudications and the bank robbery conviction.

[¶31] Rule 404(a)(2) is implicated if a defendant in a criminal case offers evidence of having a pertinent character trait. When the State seeks to rebut that evidence, the court must first determine what the specific character trait is claimed to be.[6] Second, the court must determine whether the evidence tendered by the State actually rebuts the claimed character trait.

[¶32] Here, in part on the strength of Robbins's statements noted above, the court ruled that Robbins had "opened the door" to questions regarding the bank robbery—a serious federal crime that was likely to have a powerful rebuttal effect in the jury's consideration of Robbins's asserted good character—that it had previously found in its earlier Rule 609(a) analysis to be "highly prejudicial" and likely to sway the jury. Although the court failed to articulate an express finding, pursuant to M.R. Evid. 403,[7] that at that point in

---

[6] In this matter, it is not abundantly clear what Robbins meant by "someone like me." Neither attorney asked him to elaborate, and the court made no finding.

20

the trial the heightened probative value of the conviction was no longer substantially outweighed by the danger of unfair prejudice, we infer that the court did make such a finding and conclude that the admission of the robbery conviction did not constitute an abuse of the court's discretion.[8] *See Burton*, 2018 ME 162, ¶ 20, 198 A.3d 195.

C.    Other Arguments

[¶33]   We briefly address Robbins's two remaining arguments in the interest of judicial efficiency should the same issues arise again on remand. *See Estate of Fisher*, 545 A.2d 1266, 1271 (Me. 1988).

1.    Refreshing Recollection

[¶34]  When the victim's mother testified that the victim had finalized her written statement to police four days after making her initial report, Robbins attempted to show the mother the victim's statement for the purpose of establishing that it was dated more than two months after the initial police report.   When the State objected, the court ruled that Robbins could not, as a

---

[7] The Rule provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  M.R. Evid. 403.

[8] The same cannot be said concerning the court's implied finding that the technical violations of Robbins's probation conditions had the same effect in rebutting his assertion of "good character" and therefore the probative value of those less-serious violations also overcame the significant danger of unfair prejudice.  *See* M.R. Evid. 403; *supra* ¶ 26.

matter of law, refresh the mother's recollection with another person's statement. Robbins contends that the court's ruling "fundamentally cut the legs out from under the defense cross examination."

[¶35] Because "the question presented . . . is a purely legal one," we review the court's ruling de novo, *see State v. Hastey*, 2018 ME 147, ¶¶ 22-23, 196 A.3d 432, and conclude that it was incorrect. "We have held that generally, a witness may revive her memory and achieve a present recollection from any type of writing (or other article) which might tend to serve the purpose." *State v. Joel H.*, 2000 ME 139, ¶ 20, 755 A.2d 520 (alteration and quotation marks omitted); M.R. Evid. 612. For two reasons, however, the error was harmless. *See* M.R.U. Crim. P. 52(a); *State v. Jaime*, 2015 ME 22, ¶ 38, 111 A.3d 1050 ("An error is harmless when it is highly probable that it did not affect the jury's verdict.").

[¶36] First, Robbins did not lay a proper foundation for refreshing the mother's recollection because she did not demonstrate any lack of memory concerning her daughter's written statement. When using an item to refresh a witness's recollection, "[t]he only question is whether [it] is genuinely calculated to revive the witness's memory." *State v. Poirier*, 1997 ME 86, ¶ 8, 694 A.2d 448. Absent an adequate foundation, the court's ruling barring

Robbins from using the victim's statement to refresh the mother's recollection was correct, albeit for a different reason than the one the court articulated. *See State v. Gorman*, 2004 ME 90, ¶ 41, 854 A.2d 1164 ("A trial court action, proper under the law, may be affirmed, even if for a reason different than that given by the trial court."). Second, the victim's written statement was admitted in evidence when she testified later in the trial, making it available for Robbins to use in his closing argument if he wished. He did not ask the victim about the accuracy of the statement's date when he cross-examined her.

[¶37] Finally, it is evident that Robbins's true purpose was not to refresh the mother's recollection, but rather to impeach her testimony as a whole by demonstrating that she did not testify accurately as to the date of the victim's statement. The trial court correctly ruled that impeaching the mother with the victim's statement that had not yet been admitted in evidence was improper. *See* M.R. Evid. 802.

2. Reputation Evidence

[¶38] At trial, Robbins called his niece as a witness, who testified that at the time of the incident she was in the same grade as the victim, was on the cheerleading team with her, and "had a similar group of friends." Robbins then asked his niece, "[B]ased on everything that you knew about [the victim], what

was her reputation at the time?" When the State objected, Robbins clarified at sidebar that "[his niece] would know whether or not [the victim] had a reputation for truthfulness. And that is what she is going to answer." The court ruled that Robbins had not laid a sufficient foundation and declined to allow the question.

[¶39] "We review the exclusion of reputation evidence for an abuse of discretion." *State v. Tucker*, 2009 ME 38, ¶ 15, 968 A.2d 543 (quotation marks omitted). As the proponent of the reputation evidence, Robbins bore the burden of satisfying the foundational requirements for its admission pursuant to M.R. Evid. 608(a). *Id.* ¶¶ 16, 18. We have held that

> [t]o be admissible, reputation evidence must embody the collective judgment of the community and must be derived from a group whose size constitutes an indicium of inherent reliability. The community in which the impeached party has the reputation for untruthfulness must be sufficiently large; if the group is too insular, its opinion of the witness's reputation for truthfulness may not be reliable because it may have been formed with the same set of biases. We have acknowledged that a child's community may be smaller than that of an adult, but the community nonetheless must be of sufficient size, and the members of the community must have had sufficient contact with the child, to provide the required reliability.

*Id.* ¶ 17 (alterations, citations, and quotation marks omitted).

[¶40] The victim's mother testified that the victim and Robbins's niece were in the same grade at the same school with a "fairly large" group of other

friends and that they were cheerleaders together. She described the two as "close friends" who had sleepovers "fairly often." In contrast, the niece's mother said that the two girls "hung out a couple [of] times," and the niece herself flatly denied being "good friends" with the victim.

[¶41] Prior to asking his niece about the victim's "reputation," Robbins did not establish the size of the community on which his niece was to base her opinion; who its members were; how, or how well, she knew those people; whether she had ever spoken to them about the victim's reputation for truthfulness; or even whether the victim had such a reputation at all.[9] At best Robbins established that there was "a relatively small and discrete group of friends" who might potentially undergird a reputation opinion; we have said that is an insufficient foundation. *Id.* ¶ 22 (quotation marks omitted).

[¶42] Finally, Robbins's attorney advised the court that he intended to ask Robbins's niece whether she, personally, believed the victim; the court correctly sustained the State's objection to that question. *Id.* ¶ 16 ("[A] witness's testimony reflecting her own opinion that another witness is not credible is not admissible . . . .").

---

[9] We note that, given the foundational requirements for the admission of reputation evidence pursuant to Rule 608(a), the best practice is typically for the proponent of the evidence to be required to conduct voir dire examination of the witness out of the presence of the jury.

D.    Conclusion

[¶43]  Viewing the record as a whole, we conclude that the trial court's error in admitting evidence of Robbins's federal probation violations, coupled with the actions of the prosecutor in improperly shifting the burden of proof from the State to Robbins, had a "reasonable probability" of being "sufficiently prejudicial to have affected the outcome of the proceeding" and deprived Robbins of a fair trial.  *Dolloff*, 2012 ME 130, ¶ 37, 58 A.3d 1032 (quotation marks omitted).  For that reason, we vacate the judgment and remand for a new trial.

The entry is:

> Judgment vacated.  Remanded to the Unified Criminal Docket for a new trial.

_____

ALEXANDER, J., dissenting.

[¶44]  I respectfully dissent from the Court's choice to vacate the jury's verdict and force the victim to endure a new trial by allowing Peter L. Robbins to close a door that he chose to open at trial and by finding obvious error in an insignificant colloquy that Robbins—represented on appeal by competent counsel—does not challenge on appeal.

[¶45]  Less than a year before the jury trial in this case, we published an opinion that affirmed a jury's verdict after addressing the same issues that lead the majority to vacate the jury's verdict today.  Specifically, in *State v. Hall*, 2017 ME 210, ¶¶ 18-28, 172 A.3d 467, we held that when a defendant—by his own choice—opens the door to the State's use of previously excluded evidence and does not thereafter object to the State's questioning that may or may not be proper, we would not allow that defendant to reconsider his trial strategy. In *Hall*, we did not allow the defendant, on appeal, to close a door that he opened at trial by asserting unpreserved objections to vacate a jury's verdict, absent demonstration of error far more obvious than appeared in *Hall* or appears here. *See id.* ¶ 28.

[¶46]  In *Hall*, we emphasized that "[w]e are particularly cautious in our review for *error that is unpreserved* in appeals from jury verdicts."  *Id.* ¶ 27 (emphasis added).  We further stated that "[t]he judicial deference owed jury decisions demands an appellate standard of review more rigorous than one narrowly focused on whether it was reasonably possible that the jury would have returned a different verdict."  *Id.* (quoting *State v. Pabon*, 2011 ME 100, ¶ 24, 28 A.3d 1147).

[¶47]   Those cautious standards, just reiterated in *State v. Scott*, 2019 ME 105, ¶¶ 23 n.7, 25, 34, --- A.3d ---, should govern resolution of the issues in this appeal.  Let us look at the evidence that is the focus of the Court's decision to vacate the jury's verdict and force the victim to endure a new trial.

[¶48]  The jury found that in December 2008, Robbins, a convicted bank robber then on federal probation, sexually assaulted a twelve-year-old girl by touching her genitals over her clothing and forcing her to touch his genitals over his clothing.  Robbins was indicted in 2009 for unlawful sexual touching (Class D), 17-A M.R.S. § 260(1)(C) (2018),[10] and assault (Class D), 17-A M.R.S. § 207(1)(A) (2018)—the crimes for which he was eventually convicted. Following indictment, Robbins absconded to Europe for seven years, ultimately appearing for arraignment in February 2018 and proceeding to trial in June 2018.

[¶49]   Prior to trial, the parties met with the court to discuss the admissibility of Robbins's federal bank robbery conviction and evidence of Robbins's probation violations that included having contact with a prohibited person, drinking, and lying to his probation officer.  The court ruled that if

---

10  Because, pursuant to 17-A M.R.S. § 251(1)(D) (2018), "[s]exual contact" includes "any touching of the genitals . . . directly or through clothing," and the victim was "less than 14 years of age," Robbins could have been charged with the Class C felony of unlawful sexual contact, 17-A M.R.S. § 255-A(1)(E) (2018).

Robbins elected to testify, the bank robbery conviction could not be referenced, despite the terms of M.R. Evid. 609(a), because its probative value did not outweigh its "highly prejudicial" effect.[11] The court also ruled that evidence of Robbins's lying to his probation officer could be admitted if he testified.

[¶50] At trial, the State made no attempt to address Robbins's prior conviction or his probation violations in its opening statement or during the presentation of the State's case.

[¶51] On direct examination by his attorney, Robbins testified that he drank beer on the night that he allegedly assaulted the victim but not "excessively," saying, "I don't drink excessively; I was not intoxicated." In describing his police interview, Robbins told the jury that the detective who interviewed him "[has] known who I am for a long time, and he knows I come from a good family." Robbins also testified that he asked the detective, "[W]hy does this keep happening, why do people keep saying things about me that aren't true?" He also testified that the sexual assault allegation "was horrid, horrific for someone like me."

---

[11] Maine Rule of Evidence 609(a) provides that, in general, "[e]vidence of a criminal conviction [for a crime punishable by more than one year in prison] offered to impeach a witness's character for truthfulness must be admitted if its probative value outweighs its prejudicial effect on a criminal defendant."

[¶52]   What the jury could have reasonably inferred from Robbins's testimony was that he does not drink excessively, comes from a good family, was horrified by the sexual assault charge because people like him do not do such things, and people—including the victim—keep saying bad things about him that are not true.

[¶53]   Following Robbins's direct testimony, the State appropriately requested a sidebar conference to discuss the allowable scope of cross-examination.  The State asserted that Robbins had opened the door to discussion of the alcohol-related probation violations by maintaining that he had not been drinking "excessively" on the night of the alleged assault.  The court ruled that "[i]t's fair game . . . [t]he door's open on that."  Robbins did not object.

[¶54]   The State then argued that Robbins's testimony that the criminal charge was "horrific for someone like me" opened the door to admission of the previously-excluded bank robbery conviction.  When Robbins objected, the court continued to exclude the conviction while restating its ruling that the door had been opened to evidence of the alcohol-related probation violations.

[¶55]   During the State's cross-examination, Robbins reiterated, "This is a serious, but false accusation that has offended me deeply because of who I am

and how I was raised." Robbins did admit that he had violated his probation by drinking. He also volunteered, without being asked by the State, that he had violated his probation by dating his then-girlfriend, who "was an ex-felon."

[¶56] When the State questioned Robbins about lying to his probation officer, Robbins asked, "In what way?" The prosecutor responded as follows:

> Well, your probation was violated six different ways. You were violated for failing to abstain from alcoholic beverages in August of 2008. You were violated for associating with a known felon without permission, your girlfriend in August in 2008. You were also violated for failing to provide truthful answers to a probation officer in May of 2008. You then failed to provide truthful information to a probation officer in August of 2008. You have failed to abstain from [a]lcoholic beverages in November of 2008, and you again, failed to provide truthful answers to a probation officer in September of 2008. Correct?

Contrary to his prior testimony suggesting that he was a good person from a good family and that people made false claims about him doing bad things, Robbins replied that "[i]t was a difficult time, for sure." Robbins's counsel did not object to this exchange.

[¶57] Continuing the State's cross-examination, the following exchange occurred:

> [STATE:] The rules [against drinking while on probation] didn't apply?
>
> [ROBBINS:] I tend to think that because alcohol is legal, it was kind of like bending the rules.

[STATE:] But the rules told you, you couldn't drink.

[ROBBINS:] But I don't understand what this has to do with anything.

[STATE:] It has to do with whether or not anybody should believe a word you're saying in this courtroom today.

[ROBBINS:] No—well, that's completely different. It's a different— it was a different case; it was a different time in my life.

[STATE:] A different time in your life?

[ROBBINS:] Yes. I was very depressed from losing—

[STATE:] This is November of 2008, you were sexually assaulting this girl December 2008.

[ROBBINS:] Allegedly—allegedly.

[STATE:] No, no there is no—

[ROBBINS:] Yes.

[STATE:] —allegedly here.

[ROBBINS:] It is allegedly.

[STATE:] There is testimony on the record to that effect, sir.

[¶58]   Following this exchange, Robbins expressed his frustration by saying, "I'm sorry, when's my lawyer going to speak up, please? What's going on here. This is crazy." The State then said, "I don't have anything further," and

indicated that its cross-examination was complete. Defense counsel did not object to this colloquy, and the court took no notice of the exchange.

[¶59] Although the prosecutor's "there is no . . . allegedly here" comment during cross-examination of Robbins was inartful, the printed transcript does not provide us with the full context because it cannot convey the inflection, emphasis, or demeanor of the prosecutor when he made the statement. As the United States Supreme Court has observed, timely objections to preserve errors in the trial court are essential so that review on appeal can be informed by rulings by "the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 401 (2006).

[¶60] Based only on the printed transcript, the Court decides that "[t]he prosecutor's questions to Robbins—presented in the form of assertions— explicitly conveyed his personal opinion to the jury that the victim had told the truth, and that the jury did not need to decide that question for itself." Court's Opinion ¶ 9. That seems an unduly strained interpretation of the questions to Robbins—an interpretation evidently not shared by trial counsel, the trial court, or counsel on appeal. Nothing in the transcript indicates a personal

opinion "explicitly" conveyed to the jury or direction to the jury that it need not decide the case for itself.

[¶61]  The prosecutor's primary purpose in this exchange with Robbins appears to have been to remind Robbins of the victim's prior testimony after Robbins had testified the victim had made a "false accusation."  The commonness of such exchanges in criminal trials—along with context that may not be obvious from the transcript—likely explains why neither trial counsel nor counsel on appeal asserted any error in this exchange and suggests that it was not nearly as consequential as the Court, reading only the cold transcript, now asserts.  *See State v. Vashon*, 135 Me. 309, 311, 196 A. 88, 90 (1938) ("As to the statements and questions of the Justice presiding, the printed record [cannot] reproduce inflection, emphasis or demeanor, but failure on the part of counsel to voice protest or take exception tends to indicate that the prejudicial aspect now claimed was not then apparent even to them, and it is not to be assumed that it had adverse effect upon the jury.").

[¶62]  Even if the prosecutor's statement was error—because, as the Court asserts, it improperly conveyed his opinion that the victim was telling the truth—the Court's conclusion that it rises to the level of obvious error contravenes our jurisprudence that "a jury's verdict should be upset based on

an unpreserved error only where the injustice resulting from the error is truly manifest," *Pabon*, 2011 ME 100, ¶ 28, 28 A.3d 1147, and that "[w]hen a prosecutor's statement is not sufficient to draw an objection, . . . that statement will rarely be found to have created a reasonable probability that it affected the outcome of the proceeding," *State v. Scott*, 2019 ME 105, ¶ 25, --- A.3d --- (quoting *State v. Dolloff*, 2012 ME 130, ¶ 38, 58 A.3d 1032). Indeed, if "[w]e are particularly cautious in our review for error that is unpreserved in appeals from jury verdicts" when a defendant raises the alleged error on appeal, *Hall*, 2017 ME 210, ¶¶ 27-28, 172 A.3d 467, we must be even more wary when, as here, the defendant does not raise the issue on appeal.

[¶63] Disregarding our cautious standard of review, the Court reaches out to decide that the brief exchange between the prosecutor and Robbins affected Robbins's substantial rights because it obscured his presumption of innocence and suggested to the jury that he had the burden of proof. Court's Opinion ¶¶ 12-16. If—and it is a big if—the jury gained any such impression from an exchange so insignificant that trial counsel did not object to it and counsel on appeal does not assign error to it, any possible prejudice to Robbins would have been very slight. And any slight prejudice would have been remedied by the trial court's jury instructions, which clearly and accurately

articulated Robbins's presumption of innocence and the jury's exclusive role as fact-finder. *Cf. Scott*, 2019 ME 105, ¶ 34, --- A.3d --- (concluding that "any possible prejudice to [the defendant] that resulted from the [prosecutor's] misstatements was remedied by the court's instructions to the jury").

[¶64] The trial court instructed the jury, "*You must now decide* what the facts are, meaning *you decide* what happened in this case," and "One of the most important things *you have to do* in analyzing the evidence is determine the credibility, meaning the believability, of witnesses," as well as, "Deciding credibility, deciding the facts, *that's your job. That's your job alone.*" (Emphasis added.) The trial court also emphasized Robbins's presumption of innocence, instructing the jury as follows:

> *I want to instruct you that the burden of proof in this case is entirely on the State. The defendant does not have to prove anything. The burden, as I said, is entirely upon the State.* Throughout the trial the defendant is favored with a presumption of innocence. That means that each defendant, although accused, begins a trial with a clean slate and with no evidence against him. That presumption of innocence stays with the defendant all of the way through trial right into the jury room with you. Up to the point, if you get to that point, where you're satisfied beyond a reasonable doubt that the defendant is guilty. If you do not reach that point on a particular charge, if you are not satisfied beyond a reasonable doubt that the defendant is guilty, then on that charge, the presumption of innocence still exists and it requires you to return the verdict of not guilty.

(Emphasis added.)

[¶65]   Because we "presume that the jury heeds the [trial] court's instruction[s]," *Scott*, 2019 ME 105, ¶ 23, --- A.3d --- (alterations in original) (quoting *State v. Ardolino*, 1997 ME 141, ¶ 18, 697 A.2d 73), there is no "reasonable probability" that the jurors—with the court's instructions fresh in mind—were confused about their roles as fact-finders or considered Robbins's guilt a foregone conclusion as a result of the prosecutor's inartful, but ultimately inconsequential, comment from the previous day of trial.   Court's Opinion ¶ 13.   Accordingly, I would hold that the prosecutor's comment did not constitute obvious error and does not require us to vacate the jury's verdict.[12] *See Dolloff*, 2012 ME 130, ¶ 39, 58 A.3d 1032 (stating that we will not set aside a jury verdict "lightly" after "a jury has been given a case and has done its work in deliberating and deciding on guilt or innocence").

[¶66]   As for the references to the federal probation violations, those were generated when Robbins opened the door to that evidence by his own testimony.   Addressing the issue of opening of the door in *Hall*, we held, "When

---

[12]   Such a holding would be consistent with our recent decision in *State v. Scott*, 2019 ME 105, ¶ 23 n.7, ---A.3d ---.   In *Scott*, a detective, during Scott's cross-examination, had "expressed his opinion that Scott 'was a very competent and composed liar.'"   *Id*.   Scott did not object to that testimony at trial, but, unlike Robbins, Scott did assert on appeal that the admission of the detective's statement constituted obvious error.   *Id*.   Regarding the "liar" statement, we held, "Even if we accept that the statement was objectionable, we discern no obvious error in the fact that the court did not address the detective's statement *sua sponte*."   *Id*. (citing *State v. Perkins*, 2019 ME 6, ¶ 2 n.1, 199 A.3d 1174).

a defendant elicits testimony related to previously excluded evidence during cross-examination or through presentation of the defense case, and the testimony, as delivered, is inconsistent with the excluded evidence or affects the credibility of the State's case, a court does not abuse its discretion in finding that the defendant has 'opened the door' to the excluded evidence and permitting the State to conduct limited questioning for the purpose of responding to the defendant's challenge." *Hall*, 2017 ME 210, ¶ 19, 172 A.3d 467 (citing *State v. Ifill*, 574 A.2d 889, 891 (Me. 1990)). Through his testimony, Robbins sought to have the jury infer that he does not drink excessively, comes from a good family, was horrified by the sexual assault charge because he does not do such things, and people, apparently including the victim, keep saying bad things about him that are not true.

[¶67] When the State stepped through the evidentiary door that Robbins had opened, Robbins did not object. In fact, he invited the State to inquire about the robbery conviction.[13] Such is not reversible error, nor is it a basis to cast aside our cautious standard of review, reverse the jury's verdict, and force the victim to endure a new trial.

---

[13] After Robbins admitted to the probation violations, his attorney responded to the State's argument at sidebar by saying, "If you want to ask him about whether or not he's a bank robber, be my guest."

Luke S. Rioux, Esq. (orally), Rioux, Donahue, Chmelecki & Peltier, Portland, for appellant Peter L. Robbins

Kathryn L. Slattery, District Attorney, and Thaddeus W. West, Asst. Dist. Atty. (orally), Prosecutorial District #1, Alfred, for appellee State of Maine

York County Superior Court docket number CR-2009-1792
FOR CLERK REFERENCE ONLY